## J. W. Davis *et al.* v. M. J. Coventry *et al.*

**No. 11,976.** ( 70 Pac. 583.)

SYLLABUS BY THE COURT.

1. CEMETERIES—*Public Corporations.* An association organized and incorporated for the purpose of purchasing and holding lands, surveying, platting and selling lots therein for sepulture, and otherwise maintaining a cemetery, is a public, and not a private, corporation.

2. ———— *Lotowners are Members of the Corporation.* Public cemeteries are not authorized to issue and sell stock. The owners of the lots are members of the corporation and are entitled to vote in the election of its officers and on all other matters, to the same extent as stockholders in other corporations.

Original proceeding in *quo warranto.* Opinion filed November 8, 1902. Judgment for plaintiffs.

*W. P. Dillard, C. E. Benton,* and *McCleverty & Padgett,* for plaintiffs.

*John H. Crain* and *W. R. Biddle,* for defendants.

The opinion of the court was delivered by

GREENE, J. : This is an original proceeding in *quo warranto* to compel the defendants to surrender to the plaintiffs the offices of board of directors of the Fort Scott Cemetery Association, together with all books, papers, maps and plats and other property belonging to such association. The material facts are undisputed and, summarized, are as follows : In 1869 thirty persons associated themselves together for the purpose of purchasing land upon which to plat and maintain a cemetery. Their agreement was :

"FORT SCOTT, May 29, 1869.

"We, whose names are hereto subscribed, agree to pay our equal *pro rata* part of two thousand dollars with which to purchase of W. Harris eighty acres of

ground for the cemetery, one-half payable on demand and one half on the 1st of August, 1869.''

The subscriptions were made, the land purchased and a portion thereof platted into lots for the purpose of sepulture. Application was made and a charter granted to ''The Fort Scott Cemetery Association.'' This charter provided that the capital stock should be $3000, divided into thirty shares of $100 each, and authorized the association to purchase, hold, plat and convey lots for sepulture.

There was no subscription to the capital stock. No stock was actually issued or sold. It was agreed between the original incorporators that when the land was purchased and platted each should receive free a family burying lot. This agreement was carried out and the lots deeded to such persons in accordance therewith. Thereafter lots in the cemetery were sold by the association as occasion required and the money used in maintaining the grounds.

About 1879 H. E. Cooper began to purchase of the original incorporators what he conceived to be their stock in the corporation, and continued so to do until he had purchased nineteen of such supposed shares. This, however, did not include a sale or purchase of their lots. Some time in 1880 a stock book was procured and stock regularly issued to Cooper for these nineteen supposed shares. Afterward M. J. Coventry, one of the defendants, purchased from Cooper these shares, and thereafter puchased from the other original incorporators until he had secured the interest of twenty-seven of the thirty and caused the corporation to issue to him certificates representing such shares. No certificates were ever issued to purchasers of lots.

All elections prior to the one set out by the plain-

tiff herein seem to have been held on the theory that
the original incorporators and those who succeeded to
their interests as stockholders, as distinguished from
lotowners, were the only persons who could partici-
pate in an election, or in the management of the
business of the corporation.  On the 14th day of
September, 1900, a meeting was held for the purpose
of electing a board of directors. Those owning shares
issued to the original incorporators, or their assigns,
were the only ones present and voting.  The de-
fendants herein were elected directors, M. J. Coventry
was elected president and manager, and F. H. Cov-
entry secretary and treasurer.  It is by virtue of this
election that the defendants are in possession of the
books, records, papers, maps and plats of said asso-
ciation and are claiming to be the board of directors
and officers of the corporation.

Article 4, section 2, of the by-laws reads:

"Meetings of stockholders may be held at any time
in the city of Fort Scott, Kan., upon a call   .  .  .
or by any five of the stockholders.  Five days' notice
of such meeting shall be given by mail to each stock-
holder, so far as practicable.  Such notice may be
given by the secretary or any one of those joining in
the call."

On the 3d day of September, 1900, J. D. McClev-
erty, C. A. Lakin, J. W. Davis, M. V. Barnett, and
John Glunz, being at the time lotowners but not hold-
ing any shares of stock in the association, issued a
call for a meeting of the members of the cemetery
association to be held at the court-house at the city of
Fort Scott on the 18th day of September, 1900, at
three o'clock P. M., for the purpose of electing a board
of directors and transacting other business.  This
notice was published for ten days prior to the date of
such meeting in the only daily paper published in

Fort Scott, and 305 of these notices, enclosed in envelopes and properly stamped were deposited in the post-office at Fort Scott, Kan., addressed to as many different lotowners who at the time received their mail at said post-office.

On the 18th of September, 1900, at the hour designated in such notice for the convening of the meeting, there were present fifty-one lotowners and seventy-two other lotowners represented by proxies. At this meeting the plaintiffs herein, J. D. McCleverty, J. W. Davis, C. A. Lakin, Jas. A. Moulton, and M. V. Barnett, were elected directors of such corporation. On the same day said persons qualified, and then organized by electing from the members of the board proper officers. A formal demand was thereafter made on the defendants for all books, papers, maps and plats belonging or pertaining to said association then in the possession of the defendants. This demand was refused. It is by virtue of this election and the demand thus made that plaintiffs ask possession of these offices, the property of the association, and that the defendants be ousted therefrom.

It is contended by defendants that this is a private corporation for profit and that the original incorporators, and those to whom their interests as stockholders have been assigned, constitute the corporation, and the only persons who are entitled to vote in the election of its directors or take part in the management of its business. If this be true, defendants are properly in office and should not be disturbed. If, however, this association is not a private corporation for profit and there are no stockholders, but the business is conducted by a board of directors elected by the lotowners, they are holding without authority, and the plaintiffs

have been legally elected and are entitled to the relief prayed for.

As this association was incorporated in 1869, we must look to the law in force at that time to determine the rights of the parties.   Subdivision 7 of section 5, chapter 23, General Statutes of 1868, in enumerating the purposes for which private corporations may be formed, provides that they may be formed for the maintenance of a public or private cemetery.   Article 15 of chapter 23, General Statutes of 1868, with reference to cemeteries, reads :

"SEC. 124.   Cemetery corporations shall have power to divide the land of the cemetery into lots and subdivisions, for the purposes of the cemetery, and to tax the property for the purpose of its general improvement.

"SEC. 125.   Such corporation shall have power to convey, by deed or otherwise, any lot or lots of the cemetery for purposes of sepulture.   When such lots shall have been surveyed and platted, the survey and plat shall be recorded in the office of register of deeds of the county wherein the same are situated, and shall not be afterwards changed or altered.   No lots shall be sold or disposed of until such plat shall have been recorded.   All the ground held by such corporation for burial purposes, while so held, shall be exempt from public taxation.   Every lot sold and conveyed in such cemetery shall be held by the proprietor for the purposes of sepulture only, and shall not be subject to attachment or execution.

"SEC. 126.   All owners of lots purchased of any such corporation shall become members thereof, and be entitled to vote in the election of its officers, and upon any other matters, to the same extent as stockholders in other corporations."

We may remark that these sections are unchanged, and are now sections 1381, 1382 and 1383 of the General Statutes of 1901.   It appears from section 1383

36—65 KAN.

that it was not intended that stock should be issued in a cemetery corporation, else it would not have provided that owners of lots should become members of the corporation and be entitled to vote on all matters.

Under the general provisions of the corporation law, all owners of stock are members of the corporation and are entitled to vote in the election of its officers. In the light of this general statutory provision the language of section 1383 would have no meaning. It was intended that, instead of the corporation's being controlled by stockholders, it should be controlled by the lotowners. There seems to be much reason for this outside the statutory provisions. A stockholder, if there could be one, need not own a lot or have a relative interred therein. The only incentive he would have in maintaining the ground would be to induce persons to purchase lots, and when the lots were disposed of his interest would cease, while a lotowner has a continuing and increasing interest in the property of the cemetery, in its decoration and improvement, and making it a place where his dead are to be buried, and where he expects finally to rest. It is his constant desire to have such place ornamented, and the entire ground well preserved and made inviting as a place of interment, as well as a place to which his friends may resort. This idea is well expressed in *Close v. Greenwood Cemetery*, 107 U. S. 466, 478, 2 Sup. Ct. 267, 276, 27 L. Ed. 408 :

"This was not to be a mere graveyard in which each lot-holder acquired a piece of ground in which to bury his dead, and at the same time become chargeable with the sole care of his particular lot; but the lot-holders themselves became subject to by-laws and regulations having reference to the institution as an entirety, and the perpetual preservation of the cemetery as an ornamental and convenient place for interment and for resort by the relatives of the dead."

If the lotowners may not participate in the election of its officers and the management of the affairs of the corporation, and it is purely a private corporation owned and managed by stockholders for profit, the idea of perpetuity at once vanishes.   Having sold all the lots, the profits end, and their interest ceases.   There is no further inducement to stockholders to maintain the organization or keep up its grounds.

Is this corporation public or for profit?   Many reasons may be found in the law for concluding that it is public and none supporting the contrary idea.   For instance, the property so platted and held is exempt from taxation.   It has not been the policy of the state, even if it were constitutional, to exempt private property from taxation.   No reason can be suggested why a private cemetery corporation operated for profit should receive any more grace at the hands of the legislature than a private corporation organized for any other purpose.   Another instance indicating that it is a public corporation is the limitation placed upon the corporation in its disposition of the property.   It can sell "by lot or lots" and for the purpose of "sepulture" only, and the plat, when recorded in the office of the register of deeds, "shall not be afterwards changed or altered."   Similar limitations are not found in the law governing other private corporations.   Private corporations are left to manage their property with as much independence and freedom as natural persons.

In construing a statute precisely like ours, in *Cemetery Co. v. Cemetery Ass'n*, 93 Tex. 569, 57 S. W. 27, 55 L. R. A. 503, the supreme court of Texas said:

"When the Oakland cemetery corporation laid out its lands into lots and subdivisions and caused a plat of the land to be made and recorded in the office of the county clerk of Dallas county, the land so laid out

was irrevocably dedicated to use as a place of burial for the dead, just as effectually as if the statute had stated that it should be so dedicated. The use prescribed is public in its nature, and of a character that necessarily excludes any concurrent use of the same property. Consequently, the use is exclusively for purposes of sepulture. After the dedication of the land, the legal title remains in the corporation only for the purpose of conveying the lots to those who desired to use them for the purpose of burying the dead. No power is given by the statute to such corporations to convey the property for any other purpose, and the fact that the lots and subdivisions are made unchangeable, and that the power is restricted to conveyances of 'any lot or lots . . . for purposes of sepulture,' operates as a limitation upon the power of the corporation to convey the land to 'a lot or lots,' and for the uses named. Upon dedication, the dominion of the corporation over the land as owner in fee simple was surrendered, and the corporation became, in effect, a trustee to sell and convey the lots for the purposes specified, and to carry out the purposes enumerated in the statute, with the right to appropriate the proceeds of the sale to itself in payment of the land. Each lotowner became a member of the corporation in the sense that he was entitled to participate in all elections for officers to manage the corporate business, and each was interested not only in the particular lot conveyed to him, but in the entire ground of the cemetery, to be kept as an entirety, and to be perpetuated and cared for by a corporate body.''

We are of the opinion that this is a public corporation; that in the election of its officers and the management of its business it is controlled by the lotowners; that there are no stockholders, and the shares of stock issued in this corporation were unauthorized, and the sale or assignment conveyed nothing to the purchasers, and that the plaintiffs are entitled to the relief demanded. It is ordered that

the defendants deliver to the plaintiffs all books, papers, maps, plats, surveys, and records, and all other property whatsoever belonging to said corporation, and that defendants, and each of them, be ousted and removed from the offices now held by them, and that the costs hereof be paid by them.

All the Justices concurring.