THE OSAGE CITY CEMETERY ASSOCIATION, *Appellee*, v. JENNIE HANSLIP *et al.*, *Heirs of E. W. Hanslip*, *Appellants*.

No. 16,379.

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Power to Issue or Sell Stock—Cemetery Association.* The charter of a cemetery association, incorporated in 1876, for the purpose of laying out, platting and maintaining a public cemetery or place of sepulture, contained a provision that the capital stock of the association should be $600, to be divided into sixty shares of $10 each. The full amount of the stock was subscribed and issued, and a board of directors was chosen who had general supervision of the af-

fairs of the association. The association purchased twenty acres of land, which was conveyed to it by the owner to be used as a cemetery, in payment for which he received thirty shares of the stock, and the association was to pay him one-half of the receipts from the sale of lots and expend at least $300 in improving the land as a cemetery. The land was afterward platted, lots were sold for the purpose of sepulture, and it has ever since been maintained as a cemetery. *Held,* following *Davis v. Coventry,* 65 Kan. 557, that the association is a public and not a private corporation, and that it had no authority to issue or sell stock.

2. ——— *Deeds—Consideration—Executed without Authority— Cancellation.* In 1904 E. W. Hanslip became the owner of all except one of the shares of stock issued by the association referred to in the first paragraph, and, at a meeting of the board of directors, the officers of the association were authorized to execute and did execute deeds conveying to him all the property of the association, consisting of the cemetery lots unsold and twenty acres of unplatted land. The only consideration for the conveyances was that Hanslip was to transfer to the association his shares of stock and cancel an indebtedness which he claimed the association owed him on account of services rendered. *Held,* in an action by the association to cancel the conveyances, that they were void for want of consideration and because executed without authority.

3. PRACTICE, DISTRICT COURT—*Conclusions of Law by a Referee.* Conclusions of law made by a referee are not binding upon the trial court, and the court may, without formally setting aside the report, adopt the findings of fact and determine the law for itself.

Appeal from Osage district court; ROBERT C. HEIZER, judge. Opinion filed March 12, 1910. Affirmed.

*J. H. Stavely, J. E. Jones,* and *C. S. Briggs,* for the appellants.

*Bennett R. Wheeler, John F. Switzer, C. E. Messerly,* and *J. P. McLaughlin,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: This action was commenced in December, 1906, to cancel and set aside two deeds by which the cemetery association conveyed to E. W. Hanslip all of

its real estate. While the action was pending Hanslip died intestate, and the action was revived against his heirs. The case was tried and the court gave judgment for the plaintiff. The heirs appeal.

In 1876 the Osage City Cemetery Association was incorporated under the laws of Kansas for "the purpose of laying out, platting, preparing, maintaining and ornamenting a public cemetery or place of sepulture." The charter contained a provision that the capital stock of the association should be $600, divided into sixty shares of $10 each. The full amount of the capital stock was subscribed and shares were issued. T. J. Peter subscribed for thirty shares, which were issued to him in exchange for twenty acres of land which he conveyed to the association, to be used as a cemetery, on the condition that he should receive half of the receipts from the sale of lots. The land was afterward platted, lots were sold for the purpose of sepulture, and the land has ever since been maintained as a cemetery.

In 1886 the association purchased twenty acres of additional land adjoining the cemetery, but the same was not platted and it is claimed by the appellants that no part of it was directly or indirectly dedicated to the public use for cemetery purposes, but that it has been continually used for agricultural purposes.

At the time of the organization a board of directors was chosen, which had general supervision of the affairs of the association. Hanslip was a member of the board from 1876, and had control and management of the cemetery, including the sale of lots. In 1904 he became the owner of all except one of the shares of stock, having purchased Peter's thirty shares and twenty-nine other shares. In February, 1904, a meeting of the board of directors was held, at which were present four of the seven members, including Hanslip. At this meeting the board accepted a proposition made by Hanslip to purchase all the property belonging to the association, and the officers of the association were

authorized to execute and did execute deeds conveying to him 350 cemetery lots remaining unsold, for the sum of $600, and the twenty acres of unplatted lands, for the sum of $700. The only consideration for the conveyances was that Hanslip agreed to transfer to the association his shares of stock and cancel an indebtedness which he claimed the association owed him on account of services rendered, amounting to $374.72.

One ground urged against the validity of the conveyances is that Hanslip participated in the meeting of the board of directors, and, although it appears that he did not vote upon the question, it required his presence to constitute a quorum of the board. Numerous authorities are cited in support of the proposition that a director of a corporation is a trustee for the stockholders and can not be a party to a contract between himself and the association, and that a contract made under such circumstances as this was is voidable, if not absolutely void.

We are satisfied that the judgment and decree of the trial court should be affirmed, but it is not necessary to rest the decision upon the narrow ground that Hanslip lacked authority to participate in the proceedings of the board. The main propositions involved in the case are whether there was any consideration for the conveyances, and whether, conceding that a legal quorum of the board was present, it possessed authority to authorize the conveyances. The plaintiff's first claim is that there can be no capital stock in a cemetery corporation nor any shares of stock therein, and that the directors in this case misconceived their powers and illegally and without any authority issued so-called certificates of stock, which were of no value. The plaintiff's second claim is that if the stock was legally issued the board of directors had no right to convey its property to a stockholder in exchange for stock. The first point is ruled by the case of *Davis v. Coventry*, 65 Kan. 557. In that case the Fort Scott Cemetery Association,

organized under the same law, was held to be a public or quasi public corporation, and not a private corporation. It was further held that in such a corporation there are no stockholders; that any issue of stock as provided by the charter in this case is unauthorized, and a sale or assignment of such stock conveys nothing to the purchaser, because the lot owners alone control the business of such a corporation and have the right to elect its officers. We are unable to distinguish that case in principle from this, although a distinction is sought to be made on the ground that the stock in the Fort Scott association was not issued until long after the association had been engaged in business, and because in that case the land used for cemetery purposes was not procured in exchange for the issue of stock, as in the present case. In our view this makes no difference. A cemetery association organized as this was is not strictly a private corporation. Its lands are relieved from the payment of taxes on the theory that they are dedicated to a public use. It is not a public corporation in the sense that it is a part of the sovereignty of the state or an arm or agency of the government, nor does it possess the right of eminent domain, as some public corporations do. But it is at least a quasi public corporation, and public policy, as indicated by the decision in *Davis v. Coventry,* supra, will not tolerate the placing of the power to manage or control the affairs of such a corporation in the hands of mere stockholders, who may have no interest whatever in carrying out the purposes for which the association was permitted to be formed. Without extended comment, it is sufficient to say that we are satisfied with the reasoning upon which *Davis v. Coventry* was decided, and regard the law in this state as settled. There was no authority for the issuance of shares of stock in the association.

It is argued that the plaintiff's stockholders and directors must be regarded as *de facto* officers of the as-

sociation during the years they acted as such. This may be conceded, but the landowners had the right during all that time to manage and control the association and its property. The fact that they failed to do so and allowed the purported stockholders to manage its affairs can not alter the rights of the lot owners. The certificates of stock issued by the association were without value, and the agreement to transfer the shares of stock owned by Hanslip to the association in exchange for its property was without consideration. But even if the stock had been rightfully issued, and the board of directors was in the lawful control of the association, upon what principle can it be claimed that the board had the power to authorize the conveyance of all or part of the property of the association to a shareholder in exchange for his shares? There was no relation of debtor and creditor between the shareholder and the association. A corporation is not indebted to a stockholder for the actual or face value of his shares. And what did the association receive in exchange for its property? If when the transaction was completed Hanslip owned all the property and the association nothing but the fifty-nine shares of stock, of what value were the shares? No answer is suggested in the brief to any of these questions, nor are any authorities cited in support of the claim that such a transaction should be sanctioned by the courts.

The trial court referred the case to a referee for the purpose of stating an account between the plaintiff and Hanslip. The referee found that the association was indebted to Hanslip in the sum of $124.87, but arrived at this result by giving him credit for his investment in fifty-nine shares of stock at face value, and allowing interest at the legal rate upon the investment from the time it was made. The court seems to have ignored the report of the referee and rendered judgment without taking any steps to set aside the report. It is claimed that this was error, and that the report, not

having been set aside, must be accepted as final. It was not necessary that the report be formally set aside; it was made up in part of conclusions of fact and in part of conclusions of law. The court was not bound by the referee's conclusions of law (*Martsolf v. Barnwell*, 15 Kan. 612; *The State v. Railway Co.*, 76 Kan. 467, 499), and it was competent for the court to accept the facts, about which there was really no controversy, and determine, as the court doubtless did, that the association was not indebted to Hanslip, either for the face value of his shares of stock or for interest on the amount he paid for them, and that the conveyances were void for want of consideration, as well as for lack of authority of the corporation to make them. Throwing out of the account the item of $590 allowed for the purchase price of the shares, and the item of $808.80 interest on the investment, there would be no indebtedness from the association to Hanslip. The balance would be the other way; and therefore the consideration for the conveyance of the unplatted twenty acres disappears. Since the conveyances were without consideration it becomes wholly unnecessary to consider numerous questions raised in the briefs respecting the power of a corporation to dispose of all its property and defeat the purpose for which it was created.

It is insisted, if the doctrine of *Davis v. Coventry,* 65 Kan. 557, is adhered to and the issue of stock of the association held to be unauthorized, that we should by some equitable rule hold that the certificates of stock are nevertheless evidences of an indebtedness due from the association to Hanslip, and that the judgment should be modified and the plaintiff ordered to restore to his heirs that which was found due him by the referee; and it is said that a failure to do this will deprive the appellants of property without due process of law, in violation of the fourteenth amendment to the constitution of the United States. There are several answers to this contention. For the purposes of this case it has

been determined that there was no indebtedness due from the association to Hanslip on account of the issue of the stock. Whether the judgment canceling the conveyances for want of consideration is a final adjudication of the question of indebtedness need not be determined here, as this was not an action for an accounting, but to set aside conveyances. No accounting is asked for in the answer. Hanslip himself is dead, and while his heirs are parties to the action his personal representatives are not. If the association is or was indebted to Hanslip, and the judgment here is not an adjudication to the contrary, an action in the name of the proper party can be maintained to recover what is due.

It is further argued that if it was *ultra vires* for the corporation to convey its property to Hanslip it was equally beyond the power of the association to take from the appellants the property which it is claimed is represented by the shares of stock, without giving compensation therefor. When the association was formed the twenty acres afterward platted belonged to T. J. Peter, who conveyed it to the association and agreed to accept in payment $300 in stock and one-half of the receipts of the sale of lots, the association to expend in improvements at least $300. The association seems to have performed its part of the agreement; it expended, doubtless, much more than $300 upon the premises, and made the land more valuable as cemetery lots than it would have been if used for agricultural purposes. Through a mistake of law Peter was induced to accept in part payment for his land stock which possessed no value, and neither he nor the person to whom he transferred the stock has any recourse against the association. The report of the referee shows that under the contract $2471.23 was paid by the association to the holders of the Peter stock as one-half of the proceeds from the sale of lots. It can hardly be claimed, therefore, that because the $300 certificate of stock is now held to be invalid nothing was ever received in payment

of the conveyance to the association of the twenty acres platted.

Finally, it is insisted that the judgment should be modified as to the conveyance of the twenty acres which has never been platted into cemetery lots, and authorities are cited holding that where a cemetery association takes the title to lands intending to use the same for cemetery purposes, but for some reason the plan is not carried out and the land has never been actually dedicated to cemetery uses, the association has the power to sell it. The principle relied upon would not apply to a case like the present, where the association is still engaged in maintaining a cemetery. The natural presumption is that the additional land was purchased with the intention of its being sometime used for cemetery purposes. Besides, it is not necessary to determine the power of the association to dispose of it. There was no consideration for the conveyance to Hanslip.

The judgment is affirmed.