No. 29,226.

THE CITY OF WICHITA, *Appellant*, v. AUGUST J. SCHWERTNER, *Appellee*.

(286 Pac. 266.)

Opinion filed April 5, 1930.

*A. V. Roberts, Vincent F. Hiebsch* and *Roger P. Almond,* all of Wichita, for the appellant; *George Gardner,* of Wichita, of counsel.

*L. P. Brooks, L. A. Hasty* and *J. B. Nash,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an award of damages for the widening of a street in a condemnation proceeding. The question involved is the use which could be made of the property taken. The owner contended its more favorable use was for cemetery purposes. The city contended that the property, having been zoned in the "A" residence district by a valid zoning ordinance of the city, could be used only for one- or two-family dwellings, church or temple, library, farming or truck gardening, school or college, or incidental accessory buildings. The owner contended that this ordinance was void as to this property. The trial court sustained

that contention, but to prevent a subsequent trial had the jury find the damages if the property could be used for cemetery purposes, which damages the jury assessed at $1,825, and also find the damages if it could be used for the purposes only designated in the zoning ordinance, which the jury fixed at $500. The court rendered judgment for the larger figure, and the city has appealed.

In April, 1889, John Joseph Hennessey, a bishop of the Catholic Church, acquired title to a ten-acre tract of land. This was platted and used for cemetery purposes and was known as Calvary cemetery. In November, 1916, Bishop Hennessey acquired an additional tract of land adjoining the above-mentioned ten acres on the west. This tract is 630 feet north and south and 153.78 feet [163.66 feet] east and west. This tract was bounded on the west by Rutan avenue, which was thirty feet wide. The title to both tracts was later conveyed to August J. Schwertner as bishop, who held the same for cemetery purposes and as a unit; but at the time of the condemnation proceedings, soon to be mentioned, the last-acquired tract had not been platted into cemetery lots, although that has since been done, and there have been no burials therein.

In 1922 the city of Wichita passed its first zoning ordinance. An amended zoning ordinance repealing the first was passed in July, 1926, and is still in force. Both zoning ordinances designated an "A" residence district which included Calvary cemetery, as well as other cemeteries, within the city limits. On the map, which is a part of the zoning ordinance, the original ten acres and the later acquired tract to the west of it are platted together as one tract marked "Calvary cemetery," and zoned into "A" residence district, and the ordinance provided:

"That in the 'A' residence district, . . . no buildings or premises shall be used, and no building shall be hereafter erected or altered . . . except for one or more of the following uses: One-family dwellings, two-family dwellings, churches and temples, libraries, farming and truck gardening, schools and colleges, accessory buildings incidental to the above uses . . ."

Notwithstanding this ordinance the tract of ground described as Calvary cemetery has continued to be used for cemetery purposes, burials being made there from time to time, and generally used for all cemetery purposes as though the zoning ordinance had made a specific provision for cemeteries, designating them as such and zoning them for cemetery purposes.

In 1927 the board of commissioners of the city, for good cause,

deemed it to be to the best interests to widen Rutan street from 30 to 50 feet, and did so by taking a strip 20 feet wide and 630 feet long off the land the title to which was in the name of August J. Schwertner, as bishop, as above stated. The commissioners appointed to ascertain the damages fixed the value of the property taken at $1,500, the benefits accruing to the owner $342.50, and made an award for the difference. Deeming himself aggrieved by the award, the owner appealed to the district court, where a trial was had with the results as above stated.

Appellant argues that zoning ordinances have been upheld by this court (*Ware v. City of Wichita,* 113 Kan. 153, 214 Pac. 99; *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978), also by the supreme court of the United States (*Euclid v. Ambler Co.,* 272 U. S. 365; *Zahn v. Bd. of Public Works,* 274 U. S. 325), and by many state courts of last resort (*Kroner v. City of Portland et al.,* 116 Ore. 141; *Matter of Wulfsohn v. Burden,* 241 N. Y. 288; *Brett v.. Building Commissioner of Brookline,* 250 Mass. 73; *State, ex rel., v. Houghton,* 164 Minn. 146; *State v. Fowler,* 90 Fla. 155; *State v. City of New Orleans,* 159 La. 1016; *Fourcade v. San Francisco,* 196 Cal. 655; *Pritz v. Messer,* 112 Ohio St. 628; *City of Aurora v. Burns,* 319 Ill. 84, are some of the cases so holding), on the ground that the restrictions contained in such ordinances bear a substantial relation to the public health, safety, morals, or general welfare of the people, and some of the decisions, including our own, hold that there is an æsthetic and cultural side to city government which can be made the basis of reasonable limitations in a zoning ordinance. All of this may be conceded, but from this it does not follow that zoning ordinances valid in their general scope may not be invalid as applied to a specific property within the general description of the zoning ordinance. (See *Ware v. City of Wichita,* supra, p. 161; *Nectow v. Cambridge,* 277 U. S. 183; *Seattle Trust Co. v. Roberge,* 278 U. S. 116.) Courts have authority in a proper proceeding to inquire into the facts of a specific case and to determine whether, as to a specific property, the ordinance is reasonable and valid.

We reach the same result as was reached in the trial court by considering the matter from another viewpoint, which we deem to be the correct one, namely, that the zoning ordinance in question did not in fact attempt to deal with the question of zoning ceme-

teries existing at the time the ordinance was passed. None of the cases cited dealing generally with zoning ordinances discusses them as applied to existing cemeteries. In the wording of the ordinance in question there is no mention of cemeteries. No effort is made by the ordinance to limit the use of existing cemeteries as places of sepulcher, or to designate their boundaries, or to prohibit extension of their boundaries, or to interfere with them in any way. The plat of the city, which is a part of the ordinance, recognizes the existence of cemeteries in the city, designating them by that name on the plat, and included not only the cemetery in question, but others in the "A" residence district. This, together with the fact that since the passage of the first zoning ordinance in 1922 the cemetery has continued to be used without objection on the part of the city authorities for the burial of the dead, and has been cared for and improved in all respects as prior to the passage of the ordinance, tends to suggest that such use was intended, or at least not regarded as a violation of the zoning ordinance. But perhaps this would be a strained construction of the ordinance.

In this connection the nature of a cemetery should be considered. A cemetery is a place or area of ground set apart for the burial of the dead. The law contemplates two classes of cemeteries, public and private. The former is used by the general community, or neighborhood, or church, while the latter is used only by a family, or a small portion of the community. (11 C. J. 50.) In *Cemetery Ass'n v. Meninger*, 14 Kan. 312, 317, it was said:

"A cemetery is as public a place as a courthouse, or a market. . . . We may keep away from the courthouse, and avoid the market, but the place of the dead none may shun."

See, also, *Davis v. Coventry*, 65 Kan. 557, 70 Pac. 583; *Cemetery Association v. Hanslip*, 82 Kan. 20, 107 Pac. 785, as pertaining to the public aspect of a cemetery. In *Kuhlman v. City of Beloit*, 123 Kan. 645, 256 Pac. 806, it was held that a cemetery is not a nuisance *per se*. Several sections of our statutes relate to cemeteries. (R. S. 12-1401 to 12-1419; 13-1476, 13-1477, 14-505; 17-1301 to 17-1327; 21-911 to 21-914; 60-3504; 65-130 *et seq.*; 68-149; 73-301 to 73-308; 80-901.) These disclose the public aspect of cemeteries, and something of the vital interest the living have in the places of the burial of their relatives and friends. The recent case of *Dunlap v. Union Lodge*, 129 Kan. 287, 282 Pac. 715, treats certain phases of

the subject. Perhaps a city may enact an ordinance pertaining to cemeteries within its limits, preventing the extension of their boundaries, limiting or prohibiting burials therein in the future, or even requiring the removal of the bodies already buried there (*Villa Park v. Wanderer's Rest Cem. Co.*, 316 Ill. 226; *Ex Parte Bohen*, 115 Cal. 372; *Park Hill, etc., Co. v. City of Evansville*, 190 Ind. 432; *Hallman v. Atlanta Child's Home*, 161 Ga. 247; *Iuszkewicz v. Luther*, 30 R. I. 570. See, also, 11 C. J. 51, and 3 McQuillin on Municipal Corporations, 2d ed., § 961, and cases there cited), but in the passage of such an ordinance many questions, legal and otherwise, naturally would present themselves. We are not called upon to decide these questions here. There is nothing in the zoning ordinance in question to indicate that these matters were taken into consideration in its passage. Considering these matters, and the further fact that the property in question was owned for cemetery use before the zoning ordinance in question was passed, we are forced to the conclusion that the zoning ordinance did not prohibit the use of the property for that purpose. It was therefore not error for the court to receive evidence as to the value of the property for cemetery purposes in determining the damages to be paid and in rendering judgment for damages based upon the findings of the jury for such purpose.

The judgment of the court below is affirmed.