No. 51,831

STATE OF KANSAS, *ex rel.*, ROBERT T. STEPHAN, Attorney General, *Plaintiff-Appellant* and *Cross-Appellee,* v. V. J. LANE, WOOD-LAWN CEMETERY ASSOCIATION, UNKNOWN CEMETERY CORPORATIONS, and BROTHERHOOD STATE BANK, *Defendants* and CITY OF KANSAS CITY, KANSAS, *Intervenor-Appellee* and *Cross-Appellant.*

(614 P.2d 987)

Opinion filed July 18, 1980.

*Jeffrey S. Southard,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the briefs for the appellant and cross-appellee.

*Kathryn Pruessner Peters,* assistant city attorney, argued the cause, and *Robert J. Watson,* city attorney, was with her on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by the attorney general from a decision of the trial court holding that a proceeding under K.S.A. 1979 Supp. 17-1366 *et seq.,* constitutes an unconstitutional taking of private property, without due process and without just

compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

The 1979 Kansas legislature passed an act relating to the maintenance of abandoned cemeteries, K.S.A. 1979 Supp. 17-1366 through -1368. Pursuant to the terms of the act the attorney general investigated the Woodlawn Cemetery, in Kansas City, Kansas, and determined it to be an "abandoned cemetery," as defined in the act. Specifically, investigation by the attorney general determined, and he alleged in his petition: Weeds and grass had not been cut; graves, markers, walls, fences and driveways had not been cared for; proper maintenance had been lacking for an unknown time period, exceeding one year; and the Woodlawn Cemetery Association had made no annual reports to the secretary of state, as required by K.S.A. 1979 Supp. 17-1312a.

An affidavit of Virgil and Anna Huntington, dated June 5, 1979, states:

"1. For the last fifteen years we have held the occupation of grave-diggers in Woodlawn Cemetery.

"2. We are the parties primarily responsible for burying individuals owning lots in Woodlawn Cemetery located in Wyandotte County.

"3. We do have occasion to view Woodlawn Cemetery on a regular basis.

"4. Since the passing of Mrs. A. J. Herrod in January of 1978, there has been only spot maintenance. Walls, fences, and driveways need repair.

"5. We are aware of no specific owners for the Woodlawn Cemetery.

"6. Mrs. A. J. Herrod was just an interested party for Woodlawn Cemetery and while living did as much cleaning as possible, on funds donated by plot owners."

An affidavit of Jack H. Brier, secretary of state of the State of Kansas, dated May 16, 1979, certified "that a search of our records does not reveal that a corporation by the name WOODLAWN CEMETERY, Wyandotte, County, Kansas has ever been either incorporated in the State of Kansas as a domestic corporation, or authorized to do business in Kansas as a foreign corporation."

The attorney general filed an action in Wyandotte County District Court against the Woodlawn Cemetery Association and other named defendants. The petition was filed pursuant to K.S.A., Chapter 60, and was captioned: "PETITION TO DISSOLVE CEMETERY CORPORATIONS AND TRANSFER TITLE TO PROPERTY OF SAME TO THE MUNICIPALITY OF KANSAS CITY, KANSAS." Named as defendants were V. J. Lane, the association, and Brotherhood State Bank. V. J. Lane was

the president of the association at the time the cemetery was platted; Woodlawn Cemetery Association was the cemetery's last known owner; Brotherhood State Bank (now Brotherhood Bank and Trust Co.) possessed the cemetery maintenance fund of approximately $735. All unknown cemetery associations which might have an interest in Woodlawn Cemetery were also listed as defendants. Notice by publication was printed in the appropriate newspapers pursuant to K.S.A. 60-307. Brotherhood State Bank was the only defendant to file an answer. The bank admitted holding funds owned by the Woodlawn Cemetery Association, or others, or on behalf of the association. The bank's answer alleged the exact ownership of the money was unknown to the bank, and the bank submitted the question of ownership of the funds to the trial court.

The City of Kansas City, Kansas, was permitted to intervene in the action. The trial court determined the City has a personal stake in the outcome of the controversy because the proceeding under the act would transfer to the City the cemetery's title and responsibility for cemetery maintenance. The matter was submitted to the trial court on motion for summary judgment by both the attorney general and the City.

In a memorandum opinion the trial court held K.S.A. 1979 Supp. 17-1366 through -1368 to be unconstitutional. The court held the provisions of the act which transfer title to the cemetery property are beyond the legitimate scope of police power regulation and constitute a "taking" of private property. The trial court also held the act does not provide for due process or just compensation prior to the taking of title. The trial court rejected the City's argument that the act violates the doctrine of separation of powers. The trial court also rejected the City's argument that the act's definition of abandoned cemetery, and the legislature's failure to adopt alternative methods, were an unreasonable, arbitrary and excessive exercise of police power.

The attorney general has appealed from the decision of the trial court holding the act to be unconstitutional; and the City has cross-appealed the decision of the trial court rejecting the City's argument on separation of powers and exercise of police power.

The act which spawned this suit provides:

"**17-1366. Maintenance of abandoned cemeteries; definitions.** As used in this act: (*a*) 'Abandoned cemetery' means any cemetery owned by a corporation, as

defined in K.S.A. 1979 Supp. 17-1312f, in which, for a period of at least one year, there has been a failure to cut grass or weeds or care for graves, grave markers, walls, fences, driveways and buildings or for which proper records have not been maintained and annual reports made to the secretary of state pursuant to the provisions of K.S.A. 17-1312a *et seq.,* and amendments thereto; and

"(b) 'municipality' means the cemetery district in which all or any portion of an abandoned cemetery is located. If no portion of such cemetery is located within a cemetery district, the term shall mean the city in which all or any portion of an abandoned cemetery is located unless such cemetery is not within the corporate limits of a city, in which case such term shall mean the county in which such cemetery is located."

"17-1367. Same; dissolution of certain cemetery corporations; transfer of property and moneys. Whenever the attorney general determines the existence of an abandoned cemetery in this state, the attorney general shall immediately proceed to dissolve the cemetery corporation owning the same. Upon the dissolution of such corporation, title to all property owned by the cemetery corporation shall vest in the municipality in which the cemetery is located, and the permanent maintenance fund, together with all investments then outstanding, and all books, records and papers of such corporation shall be transferred to the treasurer of such municipality and shall become the property thereof. Upon the transfer of such property and funds, the governing body of such municipality shall care for and maintain such cemetery with any moneys of the cemetery corporation including the principal of and income from the permanent maintenance fund and, if such moneys are insufficient to properly maintain such cemetery, with funds of the municipality. The principal of and income from the permanent maintenance fund may be deposited in any appropriate fund of the municipality or may be invested in the manner provided in K.S.A. 1979 Supp. 17-1311, but shall be used exclusively for care and maintenance of such cemetery."

"17-1368. Same; contract by municipality for maintenance. Any municipality required, pursuant to this act, to care for and maintain a cemetery may contract with any individual, firm, corporation or association for the care and maintenance thereof or for the sale of unsold burial lots and the opening and closing of graves, but no such contract or any other agreement entered into by such municipality shall be deemed to relieve such municipality of the duties and responsibilities imposed under the provisions of this act."

This court adheres to the proposition that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold a statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *State v. Huffman,* 228 Kan. 186, 612 P.2d 630 (1980); *State ex rel. Schneider v. Kennedy,* 225 Kan. 13, 20-21, 587 P.2d 844 (1978); *Leek v. Theis,* 217 Kan. 784, 792-93, 539 P.2d 304 (1975).

The attorney general first argues the trial court erred in ruling the provisions of the act would constitute an eminent domain "taking" of private property. The attorney general contends the act is a legitimate exercise of the police power of the State; that it is the regulation of a matter affecting public health, welfare and safety.

A state possesses an inherent power to regulate certain businesses and professions for the good of society. This "police power," as the term has become known, gives a state the right to act to protect and promote public health, safety, morals, peace, quiet, and law and order. *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 614-15, 576 P.2d 221 (1978). The police power of the State extends not only to the protection of the public health, safety and morals, but also to the preservation and promotion of the public welfare. *State v. Consumers Warehouse Market,* 183 Kan. 502, 508, 329 P.2d 638 (1958); see *State, ex rel., v. Anderson,* 195 Kan. 649, 654, 408 P.2d 864 (1965). If a statute falls within the exercise of the police power of the State, those subject to that statute must submit to its provisions, whatever the effect may be upon property or business. See *Burlingame v. Thompson,* 74 Kan. 393, 394, 86 Pac. 449 (1906). However, there are limits to the scope and permissible exercise of the State's police power. The court described those limits in *Grigsby v. Mitchum,* 191 Kan. 293, 302, 380 P.2d 363 (1963), *cert. denied* 375 U.S. 966 (1964), stating:

"Almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, or involve an injury to a person, or deprive a person of property within the meaning of the Fourteenth Amendment to the Constitution of the United States. Nevertheless, it is well settled that an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public, and if it is not unreasonable or arbitrary.

"Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public, and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them."

In *State, ex rel., v. Anderson,* 195 Kan. at 655, the court entertained a challenge to certain state statutes governing sale of burial

lots, burial vaults, and markers. After reciting familiar principles outlining the State's police power, the court stated: "We have no difficulty in saying the subject is within the scope of the state's police power. The state has long had regulatory statutes of various kinds touching upon disposition of dead bodies."

In *State, ex rel., v. Anderson,* 195 Kan. at 652, we also discussed K.S.A. 17-1311, which requires certain cemetery corporations to maintain a "permanent maintenance fund." We stated:

"The statute, originally enacted in 1901 (Laws 1901, ch. 102, § 5), expressed the public concern in maintaining in a seemly manner places set apart as burial grounds and in preventing the maintenance of privately developed public cemeteries from becoming public charges. Being of a remedial nature it is to be liberally construed to effectuate the purpose for which it was enacted (*Van Doren v. Etchen,* 112 Kan. 380, 383, 211 Pac. 144)."

The act challenged in this litigation expresses the same concern for the maintenance of cemeteries. Specific reference is made to the permanent maintenance fund established by K.S.A. 1979 Supp. 17-1311 in K.S.A. 1979 Supp. 17-1367.

Presently, over 50 statutes in Kansas Statutes Annotated, chapter 17, article 13, are devoted to the subject of cemetery corporations. Chapter 80, article 9 is devoted primarily to township cemeteries. Chapter 12, article 14 establishes the authority and responsibility of cities and municipalities for cemeteries. Without question, the legislature considers the subject of burial grounds in general, and cemetery corporations in particular, a legitimate subject for exercise of the State's police power. We concur. It must be noted the term "corporation" as it pertains to cemeteries is defined in K.S.A. 1979 Supp. 17-1312f.

The City contends the act constitutes an eminent domain "taking" of a property interest for which just compensation is due. The trial court agreed. According to the City's argument, 17-1367 "on its face" takes title to property from the cemetery corporation and gives that title to the City. Comparisons are drawn to seizure, occupation, and actual use of property by public authorities. We are asked to accept the non sequitur that "a physical invasion or acquisition has occurred, because the municipality acquires title to the cemetery corporation's property." Alternatively, the City argues that there has been such an onerous burden placed on the cemetery corporation by the transfer of title as to constitute a taking. These arguments have no merit. Both arguments arise out of the City's misconception of the property

rights which accompany title to cemetery property. We note that the trial court and the attorney general also misconceived the nature of the title held by a cemetery corporation.

It has been stated that a cemetery, by its inherent nature, is not subject to the laws of ordinary property. 14 C.J.S., Cemeteries § 1, p. 63. See *Hammerstein v. Woodlawn Cemetery,* 21 Misc. 2d 42, 194 N.Y.S.2d 385 (1960); *Evergreen-Washelli v. Revenue,* 89 Wash. 2d 660, 574 P.2d 735 (1978); *Leleux v. Viator,* 55 So. 2d 662 (La. App. 1951); *St. Peter's Evan. Luth. Ch. v. Kleinfelter,* 96 Pa. Super. Ct. 146 (1929); *Peterson v. Stolz,* 269 S.W. 113 (Tex. Civ. App. 1925).

A cemetery is a place or area of ground set apart for the burial of the dead. The law contemplates two classes of cemeteries, public and private. The former is used by the general community or neighborhood, or church, while the latter is used only by a family, or a small portion of the community. *City of Wichita v. Schwertner,* 130 Kan. 397, 400, 286 Pac. 266 (1930). A cemetery which is open to the public for burial is a public cemetery regardless of the fact it is privately owned or maintained. In *Cemetery Association v. Meninger,* 14 Kan. 312, 317 (1875), this court expressed the view that "[a] cemetery is as public a place as a courthouse, or a market. It may not be frequented as much, but visits to it are necessary and as certain. . . . We may keep away from the courthouse, and avoid the market, but the place of the dead none may shun."

We are in accord with the view that a cemetery corporation is usually organized for a public rather than private purpose, and the cemetery management is in the nature of a trust. See *Carlock v. Ladies Cemetery Association,* 317 S.W.2d 432 (Mo. 1958); *Frank v. Kugler,* 121 N.J. Super. 589, 298 A.2d 291 (1972); *Dennis v. Glenwood Cemetery,* 96 N. J. Eq. 399, 130 A. 373 (1924); 14 C.J.S., Cemeteries § 6, p. 67. The Kansas legislature requires cemetery corporations to maintain a permanent maintenance fund, which is similar to a trust fund. K.S.A. 1979 Supp. 17-1311. See Bogert, Trusts and Trustees § 377 (2d ed. rev. 1977).

In *Davis v. Coventry,* 65 Kan. 557, 563-64, 70 Pac. 583 (1902), we discussed the unique character of cemetery corporations, stating:

"Is this corporation public or for profit? Many reasons may be found in the law for concluding that it is public and none supporting the contrary idea. For

instance, *the property so platted and held is exempt from taxation. It has not been the policy of the state, even if it were constitutional, to exempt private property from taxation.* No reason can be suggested why a private cemetery corporation operated for profit should receive any more grace at the hands of the legislature than a private corporation organized for any other purpose. *Another instance indicating that it is a public corporation is the limitation placed upon the corporation in its disposition of the property. It can sell 'by lot or lots' and for the purpose of 'sepulture' only, and the plat, when recorded in the office of the register of deeds, 'shall not be afterwards changed or altered.' Similar limitations are not found in the law governing other private corporations.* Private corporations are left to manage their property with as much independence and freedom as natural persons.

"In construing a statute precisely like ours, in *Cemetery Co. v. Cemetery Ass'n,* 93 Tex. 569, 57 S.W. 27, 55 L.R.A. 503, the supreme court of Texas said:

" 'When the Oakland cemetery corporation laid out its lands into lots and subdivisions and caused a plat of the land to be made and recorded in the office of the county clerk of Dallas county, the land so laid out was irrevocably dedicated to use as a place of burial for the dead, just as effectually as if the statute had stated that it should be so dedicated. The use prescribed is public in its nature, and of a character that necessarily excludes any concurrent use of the same property. Consequently, the use is exclusively for purposes of sepulture. After the dedication of the land, the legal title remains in the corporation only for the purpose of conveying the lots to those who desired to use them for the purpose of burying the dead. No power is given by the statute to such corporations to convey the property for any other purpose, and the fact that the lots and subdivisions are made unchangeable, and that the power is restricted to conveyances of "any lot or lots . . . for purposes of sepulture," operates as a limitation upon the power of the corporation to convey the land to "a lot or lots," and for the uses named. *Upon dedication, the dominion of the corporation over the land as owner in fee simple was surrendered, and the corporation became, in effect, a trustee to sell and convey the lots for the purposes specified, and to carry out the purposes enumerated in the statute, with the right to appropriate the proceeds of the sale to itself in payment of the land.* Each lotowner became a member of the corporation in the sense that he was entitled to participate in all elections for officers to manage the corporate business, and each was interested not only in the particular lot conveyed to him, but in the entire ground of the cemetery, to be kept as an entirety, and to be perpetuated and cared for by a corporate body.' " (Emphasis added.)

In Kansas to this day, cemetery property remains exempt from taxation. K.S.A. 79-201c *Third.* All lots and tracts of land contained within the boundaries of a cemetery platted by a cemetery corporation are dedicated exclusively for burial purposes and cannot be used for any other purpose. K.S.A. 17-1302 *et seq.*; *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 44, 542 P.2d 278 (1975).

Under the terms of the act, before a cemetery corporation may be dissolved it must be established that the cemetery has been

abandoned. A cemetery corporation which has abandoned its responsibility for the cemetery property is no longer fulfilling its responsibility and forfeits its position of trust. Due to the important public interest in a cemetery, the State has seen fit to provide a procedure for the appointment of a successor trustee. Because ordinary rules of property ownership do not apply to cemeteries, and management of a cemetery corporation is similar to a trust, the title to cemetery property held by a cemetery corporation does not represent the same property interest normally associated with title to real property.

Using the foregoing analysis based upon the law cited, we conclude the trial court erred in holding that a compensable taking of private property occurred under the act in question. In *Smith v. State Highway Commission,* 185 Kan. 445, 453-54, 346 P.2d 259 (1959), the court discussed the balancing of interests which occurs in determining whether the exercise of governmental power constitutes a compensable taking or a noncompensable exercise of police power. The court stated:

"The police power is the power of government to act in furtherance of the public good, either through legislation or by the exercise of any other legitimate means, in the promotion of the public health, safety, morals and general welfare, *without incurring liability* for the resulting injury to private individuals. (*Mugler v. Kansas,* 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 and *Schaake v. Dolley,* 85 Kan. 598; 118 Pac. 80, 37 L.R.A. [n.s.] 877.) Eminent domain, on the other hand, is the power of the sovereign to take or damage private property for a public purpose on *payment of just compensation.* (*Highbarger v. Milford,* [71 Kan. 331, 80 Pac. 633 (1905)]; and *Simmons v. State Highway Commission,* [178 Kan. 26, 283 P.2d 392 (1955)].)

". . . Determination of whether damages are compensable under eminent domain or noncompensable under the police power depends on the relative importance of the interests affected. The court must weigh the relative interests of the public and that of the individual, so as to arrive at a just balance in order that government will not be unduly restricted in the proper exercise of its functions for the public good, while at the same time giving due effect to the policy in the eminent domain clause of insuring the individual against an *unreasonable loss occasioned by the exercise of governmental power.*" (Emphasis in original.)

All points raised by the appeal and cross-appeal herein are so interwoven that a categorical conclusion cannot be logically stated until all points are discussed and analyzed.

The trial court held procedural due process was violated by the act in question because there is no express provision in the act for notice and hearing. In making this determination the trial court relied on the bare statutory language directing the attorney gen-

eral to "proceed to dissolve" the cemetery corporation. K.S.A. 1979 Supp. 17-1367.

The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *Sinclair v. Schroeder,* 225 Kan. 3, 9, 586 P.2d 683 (1978); *Brown v. Fitzpatrick,* 224 Kan. 636, 640, 585 P.2d 987 (1978); *Schulze v. Board of Education,* 221 Kan. 351, Syl. ¶ 3, 559 P.2d 367 (1977). A corporation is a "person" entitled to the protection of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *State ex rel., v. American Oil Company,* 202 Kan. 185, 187, 446 P.2d 754 (1968).

It must be noted our opinion is not confined to a business enterprise known as a corporation in the technical sense. K.S.A. 1979 Supp. 17-1366 begins with the language: "As used *in this act:* (a) 'Abandoned cemetery' means any cemetery *owned by a corporation, as defined in K.S.A. 1979 Supp. 17-1312f . . . ."* (Emphasis added.)

Accordingly, the reliance of the trial court and the attorney general on *Razor Co. v. Guymon,* 110 Kan. 745, 205 Pac. 635 (1922), is misplaced. There a corporation failed to make annual statements and pay a prescribed fee within the time fixed by the legislature, and it was held to work a forfeiture of its charter, which the legislature authorized the state charter board to declare. On appeal, that legislation concerning corporations was said to be within the constitutional power of the legislature.

The general rule is that, unless there are some statutory provisions clearly requiring it, on the happening of the event giving rise to a right to forfeiture it does not of itself operate, ipso facto, as a dissolution, but simply affords ground on which the State may maintain judicial proceedings therefor; and that the corporation continues to exist until the sovereignty which created it shall by proper proceedings in a proper court procure a final adjudication of forfeiture or dissolution. 19 C.J.S., Corporations § 1649, p. 1421.

A careful analysis of the language in K.S.A. 1979 Supp. 17-1367 does not suggest that the attorney general has the authority to *declare* a cemetery in this State to be abandoned. The language reads: "Whenever the attorney general determines the existence of an abandoned cemetery in this state, *the attorney general shall*

*immediately proceed to dissolve the cemetery corporation owning the same."* (Emphasis added.)

The fundamental rule of statutory construction, to which all other rules are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statutes. *City of Salina v. Jaggers,* 228 Kan. 155, 612 P.2d 618 (1980), *Johnson v. McArthur,* 226 Kan. 128, 135, 596 P.2d 148 (1979). In determining legislative intent the court may properly look to the purpose to be accomplished, and the necessity and the effect of the statute. *Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 646, 438 P.2d 128 (1968). See also *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* 163 Kan. 458, 466-67, 183 P.2d 234 (1947) and the many rules of statutory construction cited therein. The legislation in question is designed to revive proper cemetery maintenance where the responsible cemetery corporation has abandoned its charge. The statutory scheme is designed to bring about dissolution of the cemetery corporation and transfer the cemetery property title.

We have no hesitance in finding the legislative intent in the act under consideration was to direct the attorney general to proceed in a district court, in the name of the State, to dissolve the cemetery corporation by an appropriate action pursuant to chapter 60, Kansas Statutes Annotated. An action filed in the district court, as the attorney general has done in the instant case, will ensure procedures designed to fulfill the requirements of due process notice and hearing. When, as in the instant case, the defendant cemetery corporation and its responsible officers cannot be found with the exercise of reasonable diligence, the procedures of K.S.A. 60-307, absent legitimate attack, are authorized to give the district court jurisdiction. A judicial proceeding in district court pursuant to the statute permits the trial court to determine the factual allegations of the attorney general that an "abandoned cemetery" exists. If the attorney general sustains the burden of proving the allegations in his petition, dissolution of the cemetery corporation and the transfer of the cemetery property title to the appropriate municipality are accomplished by an order of the trial court pursuant to the statute. A simple court order accomplishes what is in effect the appointment of a successor trustee to maintain the cemetery and hold title to the cemetery property.

The general corporation code presently permits district court action of a similar nature in K.S.A. 17-6808 and -6809. K.S.A. 17-6001(c) states that the provisions and requirements of the general corporation code supplement statutes on special corporations and govern special corporations when the statutory requirements are not inconsistent.

K.S.A. 1979 Supp. 17-1366 defines cemetery "corporation" by reference to K.S.A. 1979 Supp. 17-1312f, a portion of the permanent maintenance fund act. K.S.A. 17-1312d permits the attorney general, upon request of the secretary of state, to "begin action for the appointment of a receiver for such cemetery corporation and to dissolve the same." This statute is similar to K.S.A. 1979 Supp. 17-1367, in that no specific dissolution procedure is described.

In an act relating to cemetery districts, K.S.A. 1979 Supp. 17-1330 and -1331 and K.S.A. 17-1332 through -1335i, the legislature has provided for proceedings in district court when it is necessary to vest title to abandoned burial lots in the cemetery district. The suit is in the nature of a quiet title action. K.S.A. 17-1335c, 1335e.

On its cross-appeal from the trial court's decision the City raises two issues. The City contends: (1) the act is an unreasonable, arbitrary, capricious and excessive exercise of the police power, and (2) the act is an unconstitutional violation of the doctrine of separation of powers.

Treating the points on the cross-appeal in reverse order, it is readily apparent the City's argument—that the attorney general performs judicial functions under the act in question—has no merit. Under the foregoing interpretation of the act by this court the factual determination as to whether a cemetery has been abandoned, and the application of the law to the facts, is in the judicial branch of government. Here the attorney general's action filed in the district court was in strict compliance with the legislative direction to "proceed to dissolve the cemetery corporation" owning the "abandoned cemetery."

On its first point on the cross-appeal the City argues the definition of "abandoned cemetery" in 17-1366(a) is overinclusive; that a more traditional definition of abandonment should be applied. The trial court held the definition of abandonment is not the definition at common law, but that supplied by the statute.

It is argued by the City the trial court's ruling begs the ques-

tion. The point made by the City is that the statutory definition of abandoned cemetery exceeds the police power, in that it goes so far beyond the traditional definition of abandonment, and beyond what is necessary and reasonably related to the problem addressed by the statute, that it violates due process. The City asserts the act is an unconstitutional violation of the substantive due process requirements of the Fourteenth Amendment to the United States Constitution.

The police power is wide in its scope and gives the governmental body broad powers to enact laws to promote the health, morals, security, and welfare of the people. Broad discretion is vested in the governing body to determine for itself what is deleterious to health, morals, or is inimical to public welfare. However, the governing body does not possess plenary power to pass legislation that is arbitrary, oppressive, or so capricious that it has no reasonable basis. *Delight Wholesale Co. v. City of Prairie Village,* 208 Kan. 246, 249-50, 491 P.2d 910 (1971).

To justify the State's assertion of its authority in behalf of the public, it must appear that the interests of the public require such interference; that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. Debatable questions as to reasonableness are not for the courts but for the legislature. Whether the regulation imposed by the act is reasonable depends upon such things as the nature of menace against which it will protect, the magnitude of the curtailment of individual rights affected, and the availability and effectiveness of other less drastic protective measures. *Goldblatt v. Hempstead,* 369 U.S. 590, 8 L.Ed.2d 130, 82 S.Ct. 987 (1962).

There is no constraint on the exercise of the State's police power which requires the legislature to define or classify the subject of its power in accordance with old common law definitions or concepts. In fact, the very essence of the need to exercise police power may arise from a recent development which is not encompassed by traditional or common law concepts. The common law of Kansas is the common law embedded in our legal history as modified by the wants and needs of the people of Kansas. The common law definition of abandoned cemetery which the City asserts as traditional is described in 14 C.J.S., Cemeteries § 22b, p. 83, as follows:

"[S]o long as a cemetery is kept and preserved as a resting place for the dead, with

anything to indicate the existence of graves, or so long as it is known or recognized by the public as a cemetery, it is not abandoned, but it may be said to be abandoned where all the bodies have been removed, or the cemetery has been so neglected as entirely to lose its identity as such, and is no longer known, recognized, and respected by the public as a cemetery."

Cemeteries subject to the act here in question have not lost their character as burial grounds; they are still known and respected as graveyards. The legislature was confronted with cemeteries abandoned in a different sense, and properly supplied a new definition. This was clearly within the power of the State in the exercise of its police power. What has previously been said in this opinion regarding the permissible limits of the State's police power, and the important State interest in preserving and maintaining cemeteries, serves to answer the City's primary complaints.

The City, in its brief, isolates the various phrases in the definition of "abandoned cemetery" in K.S.A. 1979 Supp. 17-1366. The City contends any one condition, such as the failure to cut weeds in a few areas for a growing season, could result in a cemetery being declared abandoned. On this premise the City contends the legislature's failure to define "abandoned cemetery" in such a way as to avoid including cemeteries which are not abandoned is unreasonable, arbitrary, and capricious, and in excess of the police power.

In our opinion the definition supplied by the enactment in question is adequate because it is reasonable and bears a fair relationship to the object sought to be obtained. The definition must be read in its entirety for its meaning. If, as a *factual* matter, the definition of "abandoned cemetery" in 17-1366 is asserted by the attorney general in the trial of an action under particular circumstances suggesting that exercise of State police power would result in arbitrary, capricious, or unreasonable action, the matter can be addressed to the trial court as an issue in the case. In that situation the attorney general would simply fail to sustain the burden of proof cast upon him to establish the existence of an abandoned cemetery within the meaning of the statute.

In our opinion the trial court erred in concluding K.S.A. 1979 Supp. 17-1366 *et seq.*, effects a compensable taking of private property in violation of the Fifth and Fourteenth Amendments to the United States Constitution. We find the act in question constitutes a permissible exercise of the State's police power and is constitutional.

The judgment of the lower court is reversed in part, and affirmed in part, in accordance with our discussion in the foregoing opinion. The case is remanded for further proceedings.