### No. 10,765.

MRS. KATE FARELLY VS. METAIRIE CEMETERY ASSOCIATION ET ALS.

The acts of defendants, entrusted with enforcing rules and regulations of an association, do not bind them so as to prevent them from recognizing changes that have taken place since the title deeds were issued to lots in their cemetery.

They have the right to limit all interments in lots to the members of the family owning lots and their relatives.

The plaintiff not having been placed in charge of the property, it having been placed by the testatrix in charge of another, she can not recover judgment.

APPEAL from the Civil District Court for the Parish of Orleans. *King, J.*

*Aug. Bernau* for Plaintiff and Appellant:

Under Sections 386 and 387 of the revised Statutes of Louisiana acts of sale in cemeteries are made equally authentic and in part full proof as if they had been passed before a notary public and two witnesses. Consequently the recitals therein are entitled to all the privileges and protection extended to the same by law and can not be contradicted by parol. C. C. 2276, 2238, 2242, 2236, 2237; 40 An. 167, McKenzie vs. Bacon; same 336, Anderson vs. Beanham; 32 An. 839, Bayle, tutrix, et als. vs. Ward; 35 An. 505, Carey vs. Richardson. *A fortiori*, where the party seeking to contradict the contents of such deeds. is a party to the act.

The proof of loss of primary evidence which would authorize the introduction of secondary evidence must depend upon the particular circumstances of each case. 2 An. 190, Sexton vs. McGill; and where the better evidence is in the pos-

session of the adverse party, secondary, evidence to establish the purport or recitals of the same is admissible. 12 R. 456, Kraeutler et al. vs. Bank of the U. S.; and the onus is on him who has the best means of knowledge; 15 An. 663, Rowman vs. McElroy et al.

Where secondary evidence was admitted into the records without objection being made thereto, such evidence shall be binding and be given full force and effect. 7 N. S. 551, Tate vs. Penne; 19 La. 482, Huey vs. Dinkgrave; 2 Robinson 221 and 222, Langfit et als. vs. Railroad Co.; 15 An. 300, New Orleans vs. Dispersed of Judah; 21 An. 454, Vale vs. Olivier et al; 15 An. 529, Cox vs. Bradley.

Real property purchased and standing in the name of one person can not by parol evidence be shown to belong to another person, though such other person may have given the money for the purchase thereof, and the party in whose name the deeds were made out had been the agent of the complainant; nor will evidence be admitted to establish the fact that a person other than the one in whose name the title deed has been made out is the real owner of the property, though the party who had title made in himself had fraudulently applied money stolen by him or unlawfully acquired, to effect the purchase. Nor is evidence admissible that property standing in the husband's name was really the wife's property, having been purchased with the wife's separate funds and by her husband placed in his own name without authority. 30 An. 898, Hackenberg vs. Gartskamp, tutrix, et al; 32 An. 635, Perrault, tutrix, vs. Perrault et al.; 26 An. 446, George vs. Campbell; same 751, French, Executrix, vs. Bach et al.; 12 An. 213, Heiss vs. Cronin; 15 An. 539, Barbin, Administratrix, vs. Gaspard et al.; 14 An. 61, Wood vs. Harrell. Nor are building contracts and receipts for payment on the same admissible in evidence for the purpose of proving the ownership of real property, the transfer of real estate being provable only by a written title. 12 An. 261, Boyle vs. Succession of Leitch.

The title of the Metairie Cemetery Association showing the ownership of a lot in a particular person can not be contradicted by proof that the apparent owner of such lots had been repaid the purchase price of the same. Secondary evidence introduced to introduce this fact, which is admitted to be true by the president of the cemetery association, is entitled to the same protection as the primary evidence itself.

One who loans money to another wherewith to purchase real property, which property so purchased is placed in the name of the borrower, does not give the right to the party who loaned the money to claim any ownership in said property.

Nor is the person who loans money to another with which to purchase property, or pays for the property for another, entitled to a vendor's lien, nor has he any privilege thereon. Labouisse vs. Cotton Rope Mfg. Co., Vol. 9, Southern Reporter, p. 204 (May 27, 1891). The respondent cemetery association is bound by it own rules and regulations, and where the laws of the association reserve the burial places in the cemeteries for the exclusive burial of members of the family and relations of the owner, an heir and near relative of such owner, holding and claiming under such owner, is entitled to an injunction to restrain the burial of a stranger, who is not related to the family, in the family tomb.

Where a testatrix has left her property to various legatees, and one of her legatees is placed in charge of her tomb, it will be presumed, in the absence of other evidence to the contrary, that such tomb was to be reserved and preserved for the purpose of burial in accordance with the laws of the cemetery association, and where such legatee disclaims having taken charge of the tomb and de-

clines being made a party to a suit, and disclaims any interest therein, and actually withdraws from the suit,—the respondent association will not be permitted to prop up its unauthorized intermeddling with the affairs of others by championing the rights of a party who disclaims having any interest in the contest.

Where after judgment has been rendered against a party dissolving an injunction, with damages and costs, such party applied for a new trial; and shows to the court that she has discovered the missing primary evidence, the loss of which cast her in the suit, and annexes to her rule for a new trial a strong affidavit, and the original title deeds, showing conclusively that if the case be reopened, the matter adversely decided would be determined in her favor, it is the duty of the court, in furtherance of justice, to grant a new trial. 2 An. 225, Stone vs. Rose; 22 An. 524, Robinson vs. Howell. And where such new trial was improperly refused by the lower court, the Supreme Court finding in the record the necessary evidence, will not remand the case, but at once proceed and render such judgment as should have been rendered by the lower court. 19 An. 270, Beebe & Co. vs. Kaiser & Bryan.

*Gus A. Breaux* and *Chas. B. Stafford* for Defendants and Appellees.

The opinion of the court was delivered by

BREAUX, J.    Mrs. Kate Farelly, the plaintiff and appellant, was granted a writ of injunction against the Metairie Cemetery Association; also, against the sexton of the cemetery, and against the Sisters of St. Mary's Boys Orphan Asylum.

In her original petition she alleged that she is the sole heir of Mrs. Mary Burke, her late aunt, who was the owner of a tomb in Metairie Cemetery, which, by her will, was left in charge of the Sisters of the asylum before mentioned, for the burial of the members of her family.

That the defendants had given authority to bury in this tomb a deceased person not related to her family, and that his remains would be placed therein unless defendants are enjoined.

In a supplemental petition she alleged error in her original petition, in having alleged that she is the sole heir, there being other heirs and legatees.

There was no objection made during the trial to this supplemental petition; not supported by affidavit or bond.    It was placed at issue by answer and is now properly part of the pleadings.

In their answer, the defendants aver that plaintiff is without title or interest in the tomb claimed by her.

That it was paid for by Edward Burke, the deceased husband of the late Mary Burke, or by the executor of his will.

That if this tomb was a part of the property of the succession of the late Mary Burke, it was left, by her will, in the care and charge of the Sisters of St. Mary's Catholic Boys Asylum.

The Sisters of this asylum, without their consent and in error, having been joined in this answer with the other defendants subsequently presented a separate defence, in which they alleged that they are absolutely without interest, as the St. Mary's Catholic Boys Asylum is a chartered institution, of which they are not the legal representatives. This asylum is represented by the board of directors.

On the trial it was proven that Edward Burke died in June, 1880. His heir is a daughter, Mrs. Goddin. By last will, he appointed Augustine Burke his executor, and made him his residuary legatee.

In September , 1880, five lots of ground, containing 360 superficial feet, were purchased for the sum of $500, and the title issued in the name of Mrs. E. Burke.

Plaintiff's witness, the president of the association, testifies: " The title to lots in the cemetery is made out to the one to whom the party paying for them directs, and that the appearance of the latter, as the party signing the deed of purchase, is not required."

Another witness for plaintiff identified the lots, and is the one who contracted for the tomb in which the remains of Mrs. Burke now lie, and testifies to its being the Burke tomb.

The secretary of the St. Mary's Boys Asylum testifies that on reading Mrs. Burke's will they were informed that their board had charge of the tomb, but as they had never been authoritatively placed in possession of the tomb, they never took any special step in the premises.

By him it was proven that application had been made to place the body of Mrs. Ethelred Stafford, a niece of E. Burke, in the Burke tomb.

He wrote in answer that the asylum could not raise any objection to the use of the tomb by actual relatives of Mrs. Burke. The plaintiff does not oppose the placing the remains of Mrs. Stafford in the tomb. The contention arises in opposition to placing the remains of her husband, Ethelred Stafford, in that tomb.

A receipt was filed in evidence showing that the executor of E. Burke's estate paid at one time $1000 " on account of tomb built for the estate."

The entire cost of the tomb, viz., $3150, was paid for by the executor of that estate, with the written approval of Mrs. Burke and of Mrs. Goddin, his daughter.

The executor filed a final account, which was opposed by his widow, in which she claimed to be refunded the amount paid by her for the lots. *i. e.*, the said $500 paid by her for the succession of Ed. Burke.

Mrs. Burke died in 1884.

She bequeathed one-eighth of her property to the St. Mary's Boys Asylum, and left the tomb in charge of that institution.

The plaintiff also was one of her legatees.

Plaintiff pleads the authenticity of the transfer to Mrs. Burke under Sections 385 and 387 of the R. S., and that it can not be defeated by parol.

The defendants contend that under the rules and regulations of the association, all interments in lots in the cemetery are restricted to the members and their relatives, and that it devolves upon them to enforce these rules and regulations.

It is admitted that the Sisters of St. Mary's Boys Orphan Asylum were made parties in error, and that they are without any interest in the suit.

Judgment was rendered in favor of defendants dissolving the writ of injunction.

An application for a new trial was made and overruled.

The motion for a new trial relates that the copies of deeds issued to Mrs. Burke were not introduced in evidence for the reason that they could not be found, as they were in the possession of the executor of Mrs. E. Burke's estate, who did not know that he had them.

The plaintiff objected to a question to the president of the Metairie Association, propounded with reference to the entry in their books, in the name of an individual, not necessarily showing ownership, on the grounds that they are estopped by the recitals of the deed of sale, and that parol evidence is not admissible.

The first ground relating to estoppel will be hereafter considered. As to the second, the testimony being verbal, will not be considered in determining the rights of the parties, in so far as it does not refer to facts testified to by the witness when he was examined in chief. This witness for plaintiff testified: "When a party comes in and pays for a title, we make out the title to whoever he directs; of course we know no one except the party he names. If he takes

another man's money and asks us to make the title in his name, we issue it in his name as we would in any one else's."

The record discloses that the title issued to Mrs. Burke.

That the tomb was paid for by the estate of the husband.

It was intended as a family tomb by Mrs. Burke, and by the heirs of her husband.

In this tomb their remains should rest undisturbed. They are now protected by the rules and regulations of the Cemetery Association.

She bequeathed one-eighth of her property to the St. Mary's Boys Asylum, from which a round sum was realized, and directed in her will that the constituted authorities of that asylum should have charge of the tomb.

They have not been made parties to this suit.

The authentic character of the recital from the defendant's books and of the title issued are relied upon by the plaintiff.

The defendant association is bound by these and can not be heard to deny any of its acts in matter of the issuance of this title.

But if it be shown by competent evidence that Mrs. Burke was not the owner, the defendant company can take notice of the fact and invoke its rules, maintaining the rights of the members.

Changes may take place, transfers may be made, agents may have acted in their own names and afterward acknowledged the titles of their principals, the tomb may be owned by another than the owner of the land.

In all these possible occurrences the defendant company is not estopped from applying its rules so as to carry out the intention of the organization.

The trust is important.

The association should not be held estopped unless grounds are manifest and conclusive.

If by her acts or declarations Mrs. Burke has conclusively shown the ownership to be in her husband's estate, this fact can be established at defendant's instance.

If, as contended by the plaintiff, the evidence is parol, it can not prevail against the title as issued.

But if, by written evidence, it be proven that the price was paid by the executor, from the husband's estate, the plaintiff is without right of action.

3

The tomb was paid for by the estate of the husband.

The payment was made by the executor, not as a loan to Mrs. Burke, but in satisfaction of the price, as shown by her written approval.

As to the lots, she filed an opposition, claiming the amount paid by her.

Counsel for the defendants states that this opposition has been maintained; that the amount was paid to Mrs. Burke.

There is no evidence of payment of record. The payment is not denied by plaintiff's counsel.

As to the plaintiff, it is manifest that whether Mrs. Burke has been paid or not, she is without right, for the tomb has been placed in charge of the St. Mary's Boys Asylum. If the land is not paid, its value, relative to the tomb, is small, of which plaintiff would own only a fractional portion, were her claim allowed. In any event, be the interest what it may, Mrs. Burke has shown a regard for the memory of her husband which strongly appeals to the equity of the court.

Her remains are now near his.

Her will, as expressed, should be respected and the charge complied with by the St. Mary's Boys Asylum legatees and beneficiaries.

With the consent of that authority, the defendant association can act in matter of enforcing their said rules and regulations.

In her motion for a new trial, plaintiff alleged diligence in her attempts to procure needful evidence.

Questions of diligence in procuring evidence is left in great part to the District Court.

The plaintiff's oath that another did not know that he had these title deeds is not sufficient to entitle her to a new trial.

She testified as a witness that they had been delivered to the executor, or were seen in his possession.

He was not called upon during the trial to testify with reference to his possession of these titles.

Our conclusions, as above expressed, do not make it necessary to amend the judgment appealed from.

Judgment affirmed at appellant's cost.