ELLIS, Judge.
Plaintiff has appealed from an adverse judgment of the Lower Court wherein he sought damages on account of the destruction of an alleged family tomb in the city of New Iberia, Louisiana.
• After consideration of the pleadings, the evidence, the briefs, and the law, and the written reasons of the learned judge of the Lower Court, we find his judgment cor *664 rect and the reasons therefor full and complete as to all issues in the case, and we adopt them as our own, viz.:
“The plaintiff sues the defendant in tort to recover the sums of $100.00 for actual damage and $1,000.00 for mental anguish on account of the destruction of a family tomb in the City of New Iberia.
“In his first and second supplemental and amended petitions, plaintiff itemizes his claim for $100.00 as $60.00 for the loss and destruction of bricks, cement, and iron bars, and $40.00 for labor.
“In the second supplemental petition plaintiff identifies the family tomb plot as measuring 5' x 1CK, located in St. Peter’s Catholic Cemetery in the City of New Iberia. In this petition he claims ownership of the plot ‘all as will be shown by copy of act of donation attached hereto and made part hereof, and in the alternative by inheritance from the father, Esebe Leleux, new deceased;’. He claims that his deceased father purchased this lot to bury plaintiff’s grandfather, Augustin Derouen.
“The defendant claims that the mentioned plot does not belong to plaintiff but to him, defendant, and the other heirs of his father and that it is one of four adjacent plots belonging to his family; that plaintiff had no right to construct thereon the tomb for the destruction of which this suit is brought; that when it became necessary to use that plot of ground they obtained permission of the Catholic pastor who maintained jurisdiction and control over this cemetery as well as the sexton thereof; and that it was with the full knowledge and sanction of both these officials that they removed the small tomb found on their plot of ground. He claims that the said tomb was erected without their knowledge or consent; that its construction constituted an act of trespass and no damages can be claimed for dis-manteling it.
“In the alternative, defendant maintains that should plaintiff have some semblance of right to construct and maintain said tomb on their property, then it was a right he was exercising by sufference of the owners which right was subject to termination at the will of the owners, and that such right did terminate when his family decided to make use of the plot. He therefore denies that any damages are due.
“With the exception of two documents, the evidence consists entirely of oral testimony. The first of these documents is attached to plaintiff’s petition and reads:
“ ‘New Iberia, La Dec 13tih 1915 To all whom this may concern I this day turn over to my son Gabriel Leleu the family tomb in the Cathilic Semitary to be under his control.
s/ Euzebe LeLeu liis
s/ Gabriel X LeLeu
Witness
s/ P. D. Broussard
s/ Severin Viator
Filed & Recorded in Con. Book #86 folio 73 on this 24th day of Feby. 1916. s/ J. G. LeBlanc Clerk’
“The other document is a certified copy of an act of cash sale from Mrs. Ludovic David Landry to Mrs. Elias Lasalle Via-tor, executed April 26, 1944 of the following property: A certain lot of ground measuring 13% ft. by 10 ft. located in the Catholic Cemetery in New Iberia, La., bounded on the North by the Center Isle, on the South by the families of LeBlanc and Verret, on the East by the Family of Norris and on the West by Derouen Family.
“Most of the witnesses were members of the families involved in the dispute. The only exceptions were the sexton of the cemetery, Cesaire Segura, Sidney Boutte, who built plaintiff’s tomb, and Mrs. Louise Veazey, the landlady where plaintiff resides.
“It would serve no useful purpose to run through the testimony of each witness, as one more or less corroborates the other and there is no contradiction worth mentioning. We will therefore merely relate generally the substance of the evidence.
“Plaintiff is the son of Euzebe Leleux. Apparently Euzebe Leleux attended to the burial of Augustin Derouen, plaintiff’s grandfather, although the relationship be *665 tween Euzebe Leleux and Augustin De-rouen is not, shown. The year of this burial is uncertain, but plaintiff who is 79 years old was a young man at that time.
“Euzebe Leleux died in 1918 and he was buried in the same. tomb with Augustin Derouen. In 1922 Cesaire Segura was employed as sexton in that cemetery and about four or five years later was employed by plaintiff to construct a small tomb on top of the tomb where his father and grandfather were buried. That tomb was intended for plaintiff’s own burial and therefore had never been used. Plaintiff had ■engaged the services of the sexton to whitewash this tomb every year since its •construction.
“On the other hand, defendant’s father, who was named Severin Viator, apparently claimed this lot and the three lots adjoining it. In one of these lots, and there is ■some testimony that it is in the lot under controversy, Severin Viator’s sister, Mrs. Clara Viator David, was buried.
“In 1912, a daughter of Mr. Viator, Mrs. Remy Leblanc, was buried in one of the lots. Some of his children testified that these plots belonged to the family of their father’s mother and that their father was the only surviving member thereof. At Mrs. Leblanc’s death, it has been testified, their father called on the Catholic priest and informed him of these facts. The priest suggested that he take charge of the lots and bury his daughter there for if he did not someone else would take them.
“Shortly after the burial of Mrs. Leblanc, it is said that Mr. Viator orally divided these four lots between four of his children, giving the lot in question to his son, Elias Viator. From 1912, when this was done, until about 1944, apparently the Viators did nothing concerning the ownership or control of these tombs. About that year, Elias Viator became seriously ill and his wife desired to construct a tomb for his burial. On her lot was plaintiff’s tomb constructed over the other tomb where Au-gustin Derouen and Euzebe Leleux and perhaps Mrs. Clara Viator David were buried. This latter tomb extended approximately eight inches out of the ground and if was .on this foundation that plaintiff had built his tomb. ■
“In order to clear up the situation, she solicited the aid of her brother-in-law, the defendant, who called on plaintiff. Plaintiff refused to dismantle his tomb or to allow Mrs. Viator to make use of the lot. The defendant then called on one or more of plaintiff’s sons with the view of arriving at some amicable adjustment • of the unfortunate situation. This was of no avail.
“The Catholic priest and the sexton of the cemetery were conferred with and apparently no record to clear the situation was uncovered. Although the sexton had been whitewashing plaintiff’s tomb for many years he stated that he recognized this and the adjacent lots as belonging to the Viator family and that he would undertake the work of dismantling the tomb to build a tomb for Elias Viator. This he did. The bricks and other material removed therefrom were laid on the adjacent ground and in the course of time not having been removed, he disposed of them while cleaning the cemetery.
“Elias Viator did not die and some two years later the bottom tomb was dismantled and his tomb built on the lot. The defendant has no connection with the dismantling of the bottom tomb. It is interesting to note that although defendant admitted having been responsible for the destruction of plaintiff’s tomb, the sexton stated that his orders for doing this work were given to him by the daughter of Simon Viator, a deceased brother of the defendant.
“Plaintiff established that his tomb cost him approximately $100.00 to build and that its destruction has cost him an enormous amount of worry, anxiety and mental anguish.
“It is upon these issues and testimony that the case has been submitted.
“In their argument counsel for plaintiff claim that they have shown by clear evidence that plaintiff is the owner of the lot in question. They claim, however, that such evidence is unnecessary for the successful termination of plaintiff’s action because they liken their case to a possessory *666 action. Having had actual possession for more than one year and having been disturbed in this possession, counsel claim that plaintiff is entitled to have his possession maintained and to recover damages for its disturbance.
“It is plain, however, that this argument is untenable. There is nothing in the petition even remotely resembling one for a possessory action. That issue clearly was not raised and the trial was not had on that basis. We therefore cannot now consider it as such. The action is clearly one in tort and must be governed by the laws of tort.
“I have given this matter considerable attention in attempting to determine what rules of our law to apply. I have attempted to determine whether plaintiff or defendant was a trespasser. I have attempted to apply the rules governing the disposition of improvements placed upon the property of another under the several relationships between the owner and a third person set out in our Civil Code. I have come to the conclusion that these rules are not intended to apply in cases of this kind.
“The use of burial grounds cannot be likened to the use of other immovables for the reason that the ownership of this property is not controlled by the same rules that we apply to determine the ownership of other property. The disposal of bodies of the dead is generally handled by the family of the deceased and interment is generally made in the family tomb. Very often several members of the same family are buried in the same tomb.
“Generations after the decease and burial of the record owner and long after such owner has lost control over determining who shall be buried there, his descendants and members of his family are generally recognized as the ones who have the property in charge and hence the ones to determine who will be buried there. It seems that this custom, or the peculiar situation this brings about has long ago been recognized by law in this state.
“Revised Statutes 387 (Dart’s 1006) LSA-RS 8:1, 8:3, provides as follows: ‘All religious denominations and congregations of this State, and all other associations which now own, or may hereafter own, any portion of land destined as a place for the interment of the dead, shall have the right to sell, convey and transfer such parts, fractions, or lots of the same, as may be necessary and proper for interments ; the acts of sale, conveyance and transfer shall be passed under such form as may be prescribed by the by-laws or special resolutions of the religious denominations and congregations or other associations.
‘Acts' of sale so made shall be equally authentic and impart full proof as if they had been passed before a notary public and two witnesses. It shall not be necessary to record them in any public office, nor shall it be lawful for the recorder of mortgages in any city or parish of this State, to record or certify the existence of any privilege or mortgage bearing on said lots. The lots shall be forever free from taxation and from seizure, attachment or sequestration for debts of any owner, whether belonging to the succession of deceased persons, or to surviving friends. (R.S. § 387.)’
“In this case plaintiff exhibits a document given him by his father establishing him as the custodian of the family tomb-. There is not a word of evidence as to whether or not this document meets the requirement of the by-laws or resolutions adopted by the congregation or other association having the Catholic Cemetery in charge. We have not been given the benefit of any requirement for the disposition of lots in that cemetery.
“There has been considerable evidence regarding the attitude of the pastor of the church to which the cemetery belongs. Not much emphasis can be placed on the statements of the pastor because he apparently upheld both claimants. It was testified that he approved of the control given plaintiff by his father and was content to let plaintiff build his tomb on this lot. He likewise is said to have recognized the Viators’ claim to the lot. The same may be said about the sexton.
*667 “We do not know how plaintiff’s father acquired his right, the control and custody of which he passed to his son.
“Much has been said in argument about ■defendant’s father, Severin Viator, being a witness to the document in question. It is argued that by being a witness thereon "he estopped himself and all of his children from questioning the rights therein transferred.
“It is difficult to accede to this view as mo description of the tomb affected by the ■document is given and hence there is a possibility that it referred to some other tomb. Then again, the document is not a transfer •and cannot be considered as vesting any ■other right but that clearly mentioned ■■therein; the right to control the tomb, •unless the controlling resolutions and bylaws provide otherwise. It has not been ■shown that they do. This does not necessarily grant to plaintiff the right to erect another tomb thereon nor to have whomsoever he may designate buried therein.
 “Then again, the witnessing of a document should not cause the witness to abandon or lose any right he may otherwise have. This fact may be given weight to •corroborate other evidence. But here there is no other evidence. Standing alone, therefore, it cannot serve to prove that Severin Viator had no claim to the tomb, nor that he abandoned it, if he had any.
“It is therefore clear that under the issues and the evidence we cannot decide who owns the lot in controversy. To do ■equity between the parties that determination is essential, for ownership would be a ■determinative factor in concluding whether ■or not a tort had been committed.
“If the lot in fact belongs to defendant’s family, plaintiff had no right to construct a tomb thereon. There was no willful destruction thereof as defendant took every means at his command to ascertain his family’s rights and to convince plaintiff to remove his tomb before it was destroyed.
“On the other hand, if plaintiff had the right to construct the tomb, he had the right to maintain it there and its destruction was tortious to the extent of its cost.
 “At best, therefore, the only rule of law that we can apply is the one applicable in every civil case; that a plaintiff must prove his claim by a preponderance of the evidence. In the application of this rule we find that the plaintiff has failed to do this. He has failed to establish his right to construct the tomb that he did. The document upon which he relies is insufficient for that purpose. It stands alone. Assuming that what the document granted him was sufficient authority for the building of his tomb, the fact that his author in title, his father, is not shown to have had any rights, we would have to draw upon our imagination to conclude that such rights were passed to him in the document. His father could not pass to plaintiff greater rights than he, the father, had.
“At best, we may say that a presumption may exist, that the father had the rights he transferred to plaintiff. But such a presumption is not of sufficient weight t0' discharge plaintiff’s burden of proving his case by a preponderance of the evidence. This is especially so in view of the evidence and claims to the contrary.
“Then again, it is entirely possible that Augustin Derouen, plaintiff’s grandfather and the first of plaintiff’s relatives buried there, -was interred under conditions that would grant plaintiff no right to have himself buried there. Likewise with the burial of his father. In other words, the fact alone that his father and grandfather are buried there does not grant to plaintiff the right to construct a tomb for himself, or anyone else of his choice, to be buried therein. That right is different from the right, or obligation, to maintain tombs of relatives.
“There is likewise a vast difference between the right to construct a tomb on a cemetery plot, and the right to bring an action for the desecration of the dead. In the former case some sort of title, or right must exist. In the latter a plaintiff need have no title or right. If the bodies of the deceased members of his family are unjustifiably disturbed, one has his recourse in law for the recovery of *668 damages. On this, and other phases of the law pertaining to burial grounds are the following cases: Farelly v. Metairie Cemetery Association, 44 La.Ann. 28, 10 So. 386; Stewart v. Metairie Cemetery Association, 163 La. 108, 111 So. 616; Kenner v. Cousin, 163 La. 624, 112 So. 508; Humphreys v. Bennett Oil Corporation, 195 La. 531, 197 So. 222; Petit v. Depass, 5 La.App. 40.
“In the latter action, title to the property would not necessarily be of paramount importance, as it is in the first.
“That form of action in this case passes out of consideration as the evidence shows that defendant had no connection with the disturbance of the bodies of plaintiff’s father and grandfather.
“Although this action is one in tort, the decision herein will probably determine who shall have control of the plot in question for generations to come. This is an additional reason why convincing proof should be required before we attempt to adjudicate upon its title.
“Therefore, for lack of proof, necessary to prove his case by a preponderance of the evidence, we must find against the plaintiff at his costs.
“Let there be judgment accordingly.”
Judgment affirmed.