POKROK ZAPADU PUBLISHING COMPANY V. ANTON
ZIZKOVSKY.

FILED OCTOBER 2, 1894.    No. 5738.

1. **Libel:** SPECIAL DAMAGES: PLEADING AND PROOF. Any writ-
ten or printed statement which falsely and maliciously charges
another with the commission of an indictable, criminal offense
is libelous *per se*, and in a suit predicated upon the publication
of such statement the plaintiff need neither aver nor prove spe-
cial damages.

2. **Construction of Words in Publication:** LIBEL. In de-
termining whether the words of a publication are libelous the
courts will not resort to any technical construction of the lan-
guage used, but construe it in its ordinary and popular sense.

3. **Libel:** TRUTH OF PUBLICATION AS DEFENSE: MOTIVES. It

seems that the truth alone is not a complete defense to an action for libel. To make it such it must appear that the publication alleged to be libelous was made with good motives and for justifiable ends.

4. **Corporations:** CEMETERY ASSOCIATIONS. A cemetery association organized under section 45, chapter 16, Compiled Statutes, 1893, is a private corporation.

5. **Privileged Communications.** A communication is privileged when made in good faith, in answer to one having an interest in the information sought; and it will be privileged when volunteered, if the party to whom the communication is made has an interest in it, and the party by whom it was made stands in such relation to him as to make it a reasonable duty, or, at least, proper that he should give the information. (*Sunderlin v. Bradstreet*, 46 N. Y., 191.)

6. **Secretary of Cemetery Association:** LIBEL: CHARGE OF EMBEZZLEMENT: PROOF OF MALICE. The secretary of a cemetery association organized under the incorporation law of this state is not a public officer in such sense as to enable the publisher of a newspaper to claim that an article published concerning him, and charging him with embezzling the funds of such cemetery association, is a privileged communication, and thus compel such secretary, in an action for libel, to prove express malice. Following *Wilson v. Fitch*, 41 Cal., 363.

7. **Libel:** PRESUMPTION OF PLAINTIFF'S INNOCENCE: DEFENSE. In an action for libel, where the publication made the basis of the suit charges the plaintiff with the commission of a crime, the law presumes that the plaintiff is innocent thereof; and such presumption becomes conclusive where the defendant to the action does not plead as a defense thereto the truth of the charge.

8. ———: MALICE: QUESTION FOR JURY. In an action of libel for publishing a statement charging the plaintiff with having committed a crime, whether such publication was maliciously made, and whether its publication was an injury to the plaintiff, are questions of fact for the jury.

9. ———: PRESUMPTION OF MALICE: DAMAGES. In such a case, in the absence of all evidence, the law presumes that in the publication of such charge the publisher was actuated with a malicious intent, and that the plaintiff suffered some damages thereby.

10. ———: DEFENSE: BELIEF IN TRUTHFULNESS OF CHARGES. It is not a defense to a suit for libel that the defendant had rea-

9

sonable grounds to believe, and did believe, that the charge made by him was true. Such facts, if shown, would not relieve the publisher from liability.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

The facts are stated by the commissioner.

*Moriarty & Langdon* and *Frank T. Ransom*, for plaintiff in error:

As no special damages are alleged, no cause of action is stated in the petition unless the article complained of is libelous *per se.* ( *Geisler v. Brown*, 6 Neb., 254.)

The language of the publication is not libelous *per se.* (Odgers, Libel & Slander, p. 1; *Geisler v. Brown*, 6 Neb., 254; Criminal Code, sec. 47.)

The cemetery association was a public corporation. The alleged libel was a privileged communication, and there should be no finding against the publishing company without proof of actual malice. (*Shurtliff v. Stevens*, 51 Vt., 501; *Press Co. v. Stewart*, 119 Pa. St., 585.)

There was error in that part of the court's instruction wherein the jury was told that the "plaintiff had filed a reply to the answer in which he denies each and all the allegations of affirmative matter therein set forth." (*Dossler v. Wisley*, 32 Mo., 498; *Missouri Coal & Oil Co. v. Hannibal & St. J. R. Co.*, 35 Mo., 84; *Bradshaw v. Mayfield*, 24 Tex., 482; *Bryan v. Chicago, R. I. & P. R. Co.*, 63 Ia., 464; *Galloway v. Hicks*, 26 Neb., 536; Code, secs. 132, 134, 144.)

Instructions should be confined to the issues. Where this rule has not been observed, reversal must follow. (Sackett, Instructions, sec. 19; *Herron v. Cole*, 25 Neb., 704.)

Instructions should be clear, explicit, and concise. (Sackett, Instructions, sec. 5; *Milton v. State*, 6 Neb., 137; *Ballard v. State*, 19 Neb., 610.)

Instructions relating to the question of malice and to the question of the injury resulting from the published statement, requested by the publishing company, were erroneously refused by the court. (Odgers, Libel & Slander, sec. 469, 582; *Broadwell v. Nixon*, 4 N. J. Law, 362*; *Mills v. Sleght*, 5 N. J. Law, 565; *Todd v. Collins*, 6 N. J. Law, 154; *Marshall v. Hann*, 17 N. J. Law, 425; *Matthewson v. Burr*, 6 Neb., 312; *Gilbert v. Saddlery Co.* 26 Neb., 207; *Hancock v. Stout*, 28 Neb., 301; *First Nat. Bank of Madison v. Carson*, 30 Neb., 104; Sackett, Instructions, sec. 25; *Fitzgerald v. Meyer*, 25 Neb., 77; *School District of Chadron v. Foster*, 31 Neb., 501.)

*Capek & Piatti* and *Herdman & Herdman, contra:*

The language complained of is libelous *per se*. (*Turrill v. Dilloway*, 17 Wend. [N. Y.], 428; Townsend, Slander & Libel [3d ed.], secs. 135, 140, 143; 3 Lawson, Rights, Remedies & Practice, sec. 1241; Cooley, Torts [2d ed.], p. 240; *Chaplin v. Lee*, 18 Neb., 440; *Sanderson v. Caldwell*, 45 N. Y., 398; *Shattuc v. McArthur*, 25 Fed. Rep., 133; *Solverson v. Peterson*, 64 Wis., 198; *Hoke v. Brames*, 95 Ind., 161.)

In an action for libel evidence that plaintiff had a wife and family is admissible on the question of damage. (*Barnes v. Campbell*, 60 N. H., 27; *Rhodes v. Nagles*, 66 Cal., 677.)

It is no defense that others had previously published or spoken the same words. (Townsend, Libel & Slander [3d ed.], sec. 417; *Hinkle v. Davenport*, 38 Ia., 365; *McAllister v. Detroit Free Press Co.*, 15 Am. St. Rep. [Mich.], 347, and note.)

The cemetery association is a private corporation. (*In re Danville Cemetery Association*, 66 N. Y., 569.)

Officers and servants of a private corporation are privileged to the same extent from libelous criticism as are private individuals. (*Wilson v. Fitch*, 41 Cal., 363; *Hunt v. Bennett*, 19 N. Y., 173.)

A reply is waived where the trial proceeds as though one had been filed. (*Schuster v. Carson*, 28 Neb., 612; *Western Horse & Cattle Co. v. Timm*, 23 Neb., 526.)

A reply may be filed after verdict where both parties tried the case on the theory that the allegations of the answer were denied. (*Whitney v. Preston*, 29 Neb., 243.)

Instructions must be construed together, and if as a whole they properly state the law it is sufficient. (*City of Lincoln v. Smith*, 28 Neb., 762; *Campbell v. Holland*, 22 Neb., 589; *Bartling v. Behrends*, 20 Neb., 211; *Gray v. Farmer*, 19 Neb., 69; *St. Louis v. State*, 8 Neb., 406; *Murphy v. State*, 15 Neb., 383; *Rice v. City of Des Moines*, 40 Ia., 638; *State v. Maloy*, 44 Ia., 104.)

A charge given by the court must be construed with the evidence in the case. (*Maurer v. Miday*, 25 Neb., 580; *State v. Downer*, 21 Wis., 275; *Huffman v. Ackley*, 34 Mo., 277.)

Neither a newspaper nor an individual has a right to speak or publish defamatory words simply because they relate to matters of public concern. (*McAllister v. Detroit Free Press Co.*, 15 Am. St. Rep. [Mich.], 341, and note.)

Ragan, C.

Anton Zizkovsky sued the Poprok Zapadu Publishing Company (hereinafter called the "Publishing Company") in the district court of Douglas county, for damages for an alleged libel published by the latter of and concerning the former. Zizkovsky had a verdict and judgment, and the Publishing Company prosecutes error to this court.

On and prior to October, 1890, the Publishing Company was a corporation engaged in the printing and publishing, in the city of Omaha, of a newspaper in the Bohemian language, which paper circulated almost exclusively among Bohemians of the state—a very large number of whom resided in the city of Omaha—its circulation being about 4,000. On the date above mentioned, Zizkovsky was the

secretary of a cemetery association, a corporation organized by a number of Bohemians under the general incorporation laws of the state. The members of the cemetery association were all Bohemians, and only people of that nationality or speaking that language were entitled to become members of such corporation and make interments in said cemetery. The article published by the Publishing Company and made the basis of this action, translated into English, was as follows: " The 'cemetery association' held, again on Monday after a long while, one of its meetings. The meeting was not a very harmonious one, and the consequence was that Mr. Anton Zizkovsky, the sec. *pro tem.*, gave up his office. And how could he do otherwise, since the other members of the committee did not approve of his economy and his method of running the society's affairs. He paid out money whenever he felt like it. He paid it to whomsoever and how he pleased, without consulting anybody. But that is not the only thing. Some of his expenditures are suspicious. For instance, he counts that for nineteen days' work he paid $1.75 a day, whereas such work is paid $1.50 a day, and there are reasons to suppose that he paid no more than that, putting those 25 cents for each day into his own pocket. Another one of his entries also caused bad blood. He charged $10 for five visits to the cemetery. Not a single officer ever charged anything for something of that kind, as the inspection was always done on a day when nothing could be lost, as in the case of Zizkovsky's. And he, finding out that the committee cannot approve of such 'economy,' did not wait for them to take away the office from him, but resigned himself. With such economists as Zizkovsky is, the society would very soon end. The blame of this rests mainly with the members, who are indifferent and who do not go often enough to the meetings, all which enables such people as Zizkovsky to sneak into offices and smear their pockets."

1. The first argument made is that the publication com-

plained of is not libelous *per se*, and, since no special dam-
ages are alleged in the petition, it does not state a cause of
action.   It will be observed that the publication complained
of, in effect, made the charge that while Zizkovsky had ex-
pended only $28.50 of the cemetery association's funds for
labor upon the cemetery grounds, he charged to the asso-
ciation and took from its funds the sum of .$33.25 for said
labor, and converted the difference of said sums, or $4.75,
to his own use.   This was, in effect, charging Zizkovsky
with having committed the crime of embezzlement.

In *Hendrickson v. Sullivan*, 28 Neb., 329, it was held
that "words falsely and maliciously spoken of a person,
which impute the commission of some criminal offense, in-
volving moral turpitude, for which the party, if the charge
be true, may be indicted and punished by law, are actionable
*per se*, and no special damages need be alleged or proved in
order to maintain the action."   It is equally true that any
written or printed statement which falsely and maliciously
charges another with the commission of an indictable, crimi-
nal offense is libelous *per se*, and in a suit predicated upon
the publication of such false and malicious statement the
plaintiff need neither aver nor prove special damages.   In
determining whether the words of a printed publication
are libelous the courts will not resort to any technical con-
struction of the language used, but the court and the jury
will read the words in court as they would read them else-
where.   Language alleged to be libelous is to be construed
in its ordinary and popular sense, and the question is
whether the language, when so construed, did convey, or
was calculated to convey, to persons reading it the charge
of a crime. (*Turrill v. Dolloway*, 17 Wend. [N. Y.], 426;
*Thomas v. Blasdale*, 147 Mass., 438; *Hayes v. Ball*, 72 N.
Y., 418.)

2 and 3. The second and third errors assigned in the pe-
tition in error relate to the admission and rejection of testi-
mony on the trial; but what particular evidence the court

-erred in admitting or rejecting is not specifically pointed out, and for that reason these alleged errors cannot be considered.

4. The fourth alleged error argued in the brief is that the court, in stating the case to the jury, told them that the "plaintiff had filed a reply to the answer, in which he denies each and every allegation of affirmative matter therein set forth." Counsel for the plaintiff in error say this was a mistake; that no reply was then on file, and none was put on file until after the motion for a new trial had been overruled. The record bears out the statement of counsel for the plaintiff in error; but this action of the court is not assigned as an error in the petition in error filed herein, nor did the plaintiff in error take any exception to the statement of the issues as made by the court.

5. The fifth error argued by counsel for plaintiff in error in their brief relates to the giving of certain instructions given by the court on its own motion as follows:

"(2.) Every publication, by writing or printing, which falsely charges upon or imputes to any one a crime which renders him liable to punishment, or which alleges against him that which is calculated to make him infamous or odious in the estimation of the public, is libelous *per se*, and in such a case malice is implied from the publication against the publishers thereof."

"(4.) You are instructed that any publication in a newspaper charging one with an offense punishable under the law, or tending to bring him into contempt among his fellow-men, is a libel *per se*, or of itself, and in such case it is not required that the plaintiff should prove express malice or ill-will towards him on the part of the defendant, the law in such a case presumes malice."

The criticism made upon these instructions is that they omit falsity and malice as elements of a libel. While this may be technically correct, the court was not obliged to use the words "false" and "malicious" in every instruction

given to the jury. Instructions given to a jury must be construed together, and if, when construed as a whole, they properly state the law it is sufficient. (*City of Lincoln v. Smith*, 28 Neb., 762.) An examination of all the instructions given to the jury by the court in this case leads us to the conclusion that the jury were correctly instructed as to what constituted a libel.

It is further argued that by the instructions above the jury were in effect told that if the publication complained of was libelous, the publisher was liable therefor even though the charge made therein was absolutely true. In the first place, we do not think that a jury of reasonable men could have put any such interpretation upon these instructions. In the second place, the law presumed that the charge was false, and the Publishing Company did not plead that the charge was true. The truth or falsity, then, of the charge made against Zizkovsky was not put in issue either by the pleadings or evidence in the case. Again, we are by no means prepared to concede the other proposition of counsel, that the truth of a charge is always a complete defense in libel. The constitution (article 1, section 5) declares that "in all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense." From this it would seem that even the truth is not a complete defense in an action for libel, unless the libel was published with good motives and for justifiable ends. However this may be, we do not think it can be fairly said that the effect of these instructions was to tell the jury that they might convict the Publishing Company of libel even if they believed that the charge alleged to be libelous was in fact true.

6. The sixth assignment of error relates to the giving of certain instructions by the court at the request of Zizkovsky as follows:

"(4.) You are instructed that the law implies damages from the publication of libelous words, without proof of

special damages, and it also implies that the person who publishes the libel intends the injury which the libel is calculated to produce." It is objected to this instruction that as the element of falsity is omitted therefrom, the jury were, in effect, told that the law implies damages from libelous words whether they be true or not. What has already been said above with reference to instructions 2 and 4, given by the court on its own motion, must dispose of this criticism.

"(8.) You are instructed that a cemetery association organized under the general laws of this state is a private corporation, and that the corporation, its officers and servants, have the same and equal immunity and protection from criticism that a private individual possesses, and that the publisher of any newspaper who publishes a criticism of and concerning the officers and servants of a private corporation is responsible to the same extent for such criticism as though it had been published of and concerning a private individual." It is argued that this instruction was erroneous for three reasons:

(1.) Because the court instructed the jury that the cemetery association, of which Zizkovsky was secretary, was a private corporation. We think it was. "Private corporations are associations formed by the voluntary agreement of their members. * * * Public corporations are not voluntary associations at all, and there is no contractual relation between the corporators who compose them. They are merely government institutions, created by law, for the administration of the public affairs of the community." (Morawetz, Private Corporations, sec. 3.) This Bohemian Cemetery Association was organized under chapter 16, Compiled Statutes, 1893, entitled "Corporations," section 45 of which provides that "it shall be lawful for any number of persons, not less than five, who are residents of the county in which they desire to form themselves into an association, to form themselves into a cemetery

association, and to elect any number of their members, not less than three, to serve as trustees, and one member as clerk, who shall continue in office during the pleasure of the society; all such elections shall take place at a meeting of a majority of the members of such association, and after notice for at least twenty days in a newspaper, or by posting at least three written notices at public places in the township." A corporation organized under this section is a private corporation. (*In re Petition Deansville Cemetery Association*, 66 N. Y., 569.)

(2.) The second objection to the instruction is that because it told the jury that the officers of the cemetery association had the same immunity and protection from criticism that a private individual had, therefore the instruction assumed, as a universal proposition, that a private individual was exempt from criticism. We do not think that the effect of this instruction was to tell the jury that the law absolutely protected a private individual from criticism.

(3.) The third objection to the instruction is that by it the jury were told that the publisher of a newspaper was liable for any criticism of a private individual. We do not think the language of the instruction will bear such a construction.

"(9.) You are instructed that in arriving at a verdict in this case you are not to take into consideration anything that may have been said by counsel as to the criminal liability of any of the members of the defendant corporation." The arguments made by counsel to the jury are not in the record; and we are at a loss to understand how the question of the criminal liability of any of the members of the Publishing Company could have been in issue in this case, and therefore we cannot say that the court erred in giving the instruction complained of.

7. The seventh error assigned relates to the refusal of the court to give to the jury, at the request of the Publishing Company, a number of instructions. Without

quoting these instructions, or any of them, it must suffice to say that the substance of all the instructions refused·were given by the court in other instructions.

8. The Publishing Company, in the third paragraph of its answer, set out that prior to the publication of the article alleged to be libelous there existed in the city of Omaha a corporation by the name of the "Bohemian Cemetery Association;" that it owned a piece of land that had been laid out and platted into lots for burial purposes; that the purchasers of said lots were Bohemian people residing in said city; that the stockholders and members of said association consisted largely of Bohemian people, who spoke and read the Bohemian language; that Zizkovsky was the secretary of the cemetery association, and that it was his connection with the cemetery association as its secretary, and the mode in which he discharged his duty as such officer, to which allusion was made in the article alleged to be libelous; that it was through publications made by the Publishing Company that the Bohemian people living in Omaha became acquainted with the location of the cemetery and of its existence as a corporation, and that all the members of said corporation were directly or indirectly concerned in the manner in which Zizkovsky discharged his duty as secretary thereof, and that the alleged libel or publication was nothing more than a fair comment of Zizkovsky's conduct as secretary; that it was made in good faith, without malice or ill-will towards Zizkovsky, and was made in the honest belief of its truth as a matter of news, in which the Bohemian people in general and the members of the cemetery association especially were directly or indirectly interested. No reply was filed to this answer until after the verdict of the jury was rendered. It is now argued by the counsel for the Publishing Company that as the allegations of this answer were not denied by a reply, all the material allegations therein stand confessed and admitted, and that the district court should have granted the Publishing Company

a new trial. It appears from the record that after the Publishing Company had called witnesses and introduced evidence tending to support the allegations of its answer, and after it had rested its case, Zizkovsky was called and testified in rebuttal. No objection was made to the rebuttal testimony on the ground that a reply had not been filed. In other words, it appears that the case was tried on the theory that a reply was on file. The objection of the Publishing Company that no reply was filed comes, then, too late. (*Schuster v. Carson*, 28 Neb., 612; *Western Horse & Cattle Ins. Co. v. Timm*, 23 Neb., 526.) But it is said by counsel for the Publishing Company that the testimony given in rebuttal by Zizkovsky was not directed to and did not traverse the truth of the allegations of the answer, and that, therefore, the case stands as it would had no reply been filed, and had the case not been tried on the theory that a reply was on file. The answer to this is that the Publishing Company called witnesses and put in evidence which tended to prove all the allegations of its answer. These witnesses were cross-examined by Zizkovsky, so that the truth of the averments of the Publishing Company in its answer went to the jury, and their general finding against the Publishing Company must be taken to mean that in the opinion of the jury, it had not made out the defense set out in its answer.

Another argument under this head is that this publication under the circumstances was a privileged communication. "A communication is privileged within the rule when made in good faith, in answer to one having an interest in the information sought; and it will be privileged if volunteered when the party to whom the communication is made has an interest in it, and the party by whom it is made stands in such relation to him as to make it a reasonable duty, or, at least, proper that he should give the information." (*Sunderlin v. Bradstreet*, 46 N. Y., 191.) We do not think that the publication in this case comes within the

rule of a privileged communication. It was volunteered by the Publishing Company to all the readers of the Publishing Company's paper. The evidence shows that this paper had a circulation of some 4,000 readers, the greater part of whom had no interest in the affairs of the cemetery association; and, furthermore, the Publishing Company stood in no such relation to the members of the cemetery association as to make it a reasonable or proper duty that the Publishing Company should publish this communication. "The trustee of a private corporation is not a public officer in such a sense as to enable the publishers of a newspaper to claim an article published concerning him, and criticising his conduct as trustee, as a privileged communication, and, therefore, compel such trustee, in an action for libel, to prove express malice." ( *Wilson v. Fitch,* 41 Cal., 363.)

9. The final argument of the counsel is that Zizkovsky's evidence failed to establish the three following conclusions: (1) That the alleged libel was false; (2) that it was published maliciously; (3) that it injured Zizkovsky's reputation; and that, therefore, the verdict is contrary to the law and evidence. The answer of the Publishing Company admits the publication of the alleged libel, and does not plead as a defense that the matters charged in the publication against Zizkovsky were true. As has already been seen, the publication charged Zizkovsky with the commission of a crime. Of the commission of this the law presumed him to be innocent until the Publishing Company pleaded his guilt as a defense and satisfied the jury of the truth of the plea by a preponderance of the evidence. The Publishing Company not having pleaded as a defense that the charges they made against Zizkovsky were true, the law, by presumption, supplied the conclusive proof that the charge was false. The question, then, as to whether the charge made by the Publishing Company against Zizkovsky was true was not an issue in the case. The Publishing Company

did plead that at the time it made the publication it had reason to believe, and did believe, that the charges made therein were true. This was not a defense. It is no defense to a suit for libel that the party sued had reasonable grounds to believe that the charge made was true. Such facts, if shown, would not relieve the publisher from liability. (*Shattuc v. McArthur*, 25 Fed. Rep., 133.) Whether the article complained of was published maliciously, and whether its publication was an injury to Zizkovsky, were questions of fact for the jury. In the absence of all evidence the law presumes that in the publication of an article which is libelous upon its face, the publisher was actuated with a malicious intent. (*Zuckerman v. Sonnenschein*, 62 Ill., 115; *Byrket v. Monohon*, 7 Blackf. [Ind.], 83; *Pennington v. Meeks*, 46 Mo., 217; *Mitchell v. Milholland*, 106 Ill., 175.) Where the publication complained of is libelous of itself, as in this case, no proof of actual injury to the plaintiff by reason of its publication was necessary to entitle him to recover something, as the law presumed that he had suffered some injury by reason of the publication, and the amount of that injury or damage was a question for the jury. (*Bergmann v. Jones*, 94 N. Y., 51; 1 Sutherland, Damages, p. 12; *Miles v. Harrington*, 8 Kan., 430; *Yeates v. Reed*, 4 Blackf. [Ind.], 463; *Swift v. Dickermann*, 31 Conn., 285; *Mitchell v. Milholland*, 106 Ill., 175; *Stewart v. Minnesota Tribune Co.*, 40 Minn., 101.) Whether this publication, then, was maliciously made, whether it injured or damaged Zizkovsky, were questions for the jury to determine from all the evidence, taking into consideration the publication itself and the circumstances under which it was made; and we cannot say, after reading all the evidence in the case, that the jury came to an incorrect conclusion.

Counsel for the Publishing Company eloquently appeal to us to set aside this judgment, because, they say, "that to sustain such judgment would be to establish a dangerous

precedent; to strike a deadly blow at the liberty of the press; to ignore an important, popular right which has been strongly hedged about with constitutional safeguards; to disregard the spirit of our institutions and the tendency of our age; to lose sight of the uniform policy of our country's legislation, both state and national; and to put in chains, so to speak, a great organ of public opinion which for more than a century past has been looked upon as one of the mainstays of a republican form of government." Counsel are to be commended for the zeal and the ability which they have displayed in their defense of this case. But it must not be forgotten that the same constitution which guaranties the freedom of the press guaranties also to the individual life, liberty, the pursuit of happiness, the protection of property, and, impliedly at least, reputation. To all well disposed persons a good reputation is as dear and as valuable as property. Indeed, a reputation for honesty is the only property possessed by many people. It is not striking down the "liberty of the press," to hold it civilly responsible for spreading broadcast over the land the false charge that an individual has been guilty of a crime. Who is Zizkovsky? A Bohemian who came to our shores for the purpose of gaining in the great west a home for himself and his family, which, perhaps by reason of the crowded condition of his native land and by reason of his poverty, he could not acquire there. He appears to be a laboring man, but he is none the less a citizen and entitled to the protection of the law on that account. It appears from the record that he can but poorly speak or understand the English language. It is, then, but a reasonable inference that his association with his fellow-men is limited to people of his own nationality. To charge him in the Bohemian language in a public newspaper with having committed the crime of embezzling the funds of a cemetery association, organized by and for the benefit of people of his own nationality, was not only to charge him

with a crime but a crime of a very detestable character. The tendency of the charge was to hold him up to the ridicule and the contempt of his own people and to put him without the pale of their confidence, friendship, and society. This was to inflict a greater injury upon Zizkovsky than it would have been to deprive him of his property.

> "Who steals my purse, steals trash; 'tis something, nothing.
> 'Twas mine, 'tis his, and has been slave to thousands;
> But he that filches from me my good name,
> Robs me of that which not enriches him,
> And makes me poor indeed."

The judgment of the district court is

AFFIRMED.