54 N.J. Super. 141 (1959)
148 A.2d 510
THE TRUSTEES OF THE FIRST PRESBYTERIAN CHURCH IN NEWARK, A CORPORATION, PLAINTIFF,
v.
DAVID ALLING ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 13, 1959.
*142 Messrs. Riker, Danzig and Marsh (Mr. Irving Riker appearing), attorneys for plaintiff.
Mr. Samuel B. Helfand, Deputy Attorney General, appearing for Mr. David D. Furman, Attorney General of the State of New Jersey.
Mr. George Warren, guardian ad litem, appearing pro se.
SULLIVAN, J.S.C.
Plaintiff, the Trustees of the First Presbyterian Church in Newark, a New Jersey Corporation, owns a tract of land on Broad Street, Newark, New Jersey, on which are erected a church and a parish building. It is one of the oldest churches in the city, having been erected prior to 1800. Just adjacent to and in the rear of the church and parish building is an old burying ground or cemetery also owned by plaintiff.
*143 Plaintiff holds title to the burying ground by virtue of a judgment quieting title to said property based on adverse possession and entered in this court on March 25, 1957. Prior to said judgment, and with a few minor exceptions, there was no record title to these lands in plaintiff, although there is some indication that the church did purchase a burying ground in the rear of the church about 1790. Since then and in the intervening years the area has been added to and enlarged. What happened was that owners of lands adjacent to the cemetery established family burial plots on their own property and next to the church burying ground. Subsequent conveyances of these lots did not include the burial plots, which simply became part of the church cemetery but without any formal conveyance. Other owners of adjacent property subdivided part of their holdings into burial plots and presumably sold them off. For example, there is on record a filed map covering part of the present cemetery area and entitled as follows: "First Church Burying Ground. Map of Ground thrown into the enclosure of the First Presbyterian Church Burying Ground 17th April 1835, divided and numbered for burying lots according to the lines and dimensions of this map by Amos Day." There are not any restrictions as to use of record, for any part of the present cemetery area. Nor is there any record of any formal dedication of such property for burial purposes.
When plaintiff brought suit in 1956 to quiet title to the present cemetery grounds based on adverse possession, there were joined as parties defendant, known and unknown persons who might have an interest in the property. On March 25, 1957 a judgment was entered quieting title to said property in plaintiff.
At the present time, therefore, plaintiff is the owner of this property which is subject to a trust or dedication for burial purposes. This suit is, in essence, an application by plaintiff to obtain court approval of a plan to abandon the further use and maintenance of the greater part of the cemetery grounds as such, and thereafter use or dispose of the same free of any dedication for burial purposes.
*144 It is difficult to obtain any precise information about the cemetery itself. There are no adequate records kept by the church or anyone else, and it is impossible to ascertain the number of interments, the locations of the particular graves, or who is buried there. About the only records available are the gravestones themselves, and the inscriptions on most of them are wholly or partially illegible. A great many stones are broken or missing. Many have been moved from their original location.
In 1898 the church did have a compilation made of the gravestones and the inscriptions thereon. Even then it appears that many of the stones were in a deteriorated condition and the inscriptions thereon unreadable. The 1898 survey indicates that there were about 1,300 interments as shown by the stones. Most of the burials were prior to 1850 with only a few since then. Minutes of board meetings indicate that in 1887 the board of trustees of plaintiff church passed a resolution forbidding any further interments in this cemetery.
Over the years the burying ground has deteriorated in appearance. It does not receive any care at all except in the summer time when the grass is rough cut to prevent the area from becoming completely overgrown. Any semblance of paths or walks has become completely obliterated. Boundary markers for the individual plots are broken, missing, or moved. In addition to the underbrush and debris which has accumulated in many areas, numerous large trees have grown up throughout the cemetery. These have in turn dislodged and moved grave stones and markers. The picture presented is lack of adequate care over a great period of years to the point where now, as a practical matter, it is impossible to restore the cemetery.
There is no perpetual care fund of any kind and no one assists the church in any way in caring for the place. To rehabilitate and maintain it to any degree of respectability under the circumstances would require the expenditure of substantial funds on an annual basis. The trustees plaintiff feel *145 that the church income, which is limited, should be devoted to more worthwhile purposes.
The burying ground is completely landlocked. It is bounded on the east by the rear of lots facing on Mulberry Street. It is bounded on the south by the Broad Street Central Railroad Terminal. On the north it is bounded by the rear of lots facing on Edison Place. On the west is the church itself and parish building. No one can visit the cemetery except by going through the church buildings and out a rear door. Because of this it has been possible to note any visits that may be made. According to the proof no one visits any of the graves any more. It is truly a cemetery of by-gone times.
Because of the foregoing, the plaintiff, the trustees of the church, has asked for permission to abandon the further use and maintenance of the greater part of the present cemetery grounds as such, and thereafter use or dispose of the same free of any dedication for burial purposes.
Specifically, plaintiff proposes to disinter and remove the remains throughout the entire cemetery. A small section thereof consisting of a plot approximately 160 feet in width and about 30 feet in depth and located immediately to the rear of the church buildings will be reserved and continued as a cemetery. All of the disinterred remains, if any are found, are to be reburied in a common grave in this reserved area and a suitable monument erected in memory of all persons buried in the entire cemetery. This smaller area will be landscaped and thereafter maintained by the church in a suitable manner. The balance of the property is to be then freed of any dedication for burial purposes with plaintiff to have the right to use or dispose of the same as it sees fit.
Aside from statutory authorization for the relief sought (see N.J.S.A. 8:3-8 et seq.), there is no doubt of this court's original jurisdiction to entertain this application. A burying ground or cemetery is affected with a public interest and is a trust. This court has always exercised supervision and control over cemetery matters. Atlas Fence Co. v. West Ridgelawn Cemetery, 110 N.J. Eq. 580 (E. & A. *146 1932); Emmerglick v. Vogel, 131 N.J. Eq. 257 (Ch. 1942); George Washington Memorial Park Cemetery Ass'n. v. Memorial Development Co., 141 N.J. Eq. 47 (Ch. 1947). In the case of Newark v. Stockton, 44 N.J. Eq. 179 (E. & A. 1888), dealing with a publicly owned cemetery, Chief Justice Beasley, speaking for the Court of Errors and Appeals, held that where a cemetery had ceased to serve the purpose for which it was created, and had become neglected and abandoned, it is proper to terminate the cemetery's existence and convert the property to other uses. His opinion at page 191 has this to say:
"* * * But this cemetery has long since ceased to be used as a place of sepulture. Such a use of it has been and is now forbidden by law. It is a cemetery of the past,  a place where the bodies of a by-gone generation repose. The question would be whether this tract of land should be, for all time to come, devoted to this limited use. Such, obviously, was not the intention of the donors. The inhabitants of the city, who are the beneficiaries of the charity, through their duly constituted authorities, would stand before the court showing that the devotion of the land to its present purpose is, taken as a whole, not a benefit, but a serious detriment, to the public, and that it is reasonable to remove the bodies in this yard to a more suitable place, to be provided out of the city treasury, and thus effectuate that part of this charity that only is susceptible of being carried out. It is not perceived on what ground a court of equity could refuse to accede to such a prayer; for it does not seem possible that any reasonable person would say that this tract of land, in the most populous part of a large city, should be permitted to remain, for all future time, devoted merely to its present use; for to say this would, in effect, be to maintain that a charity will be so carried into effect as to work an injury to its beneficiaries. It seems to us plain that, under the conditions presented, the chancellor, if he had been properly applied to, would have been bound to permit the designed transmutation of this property."
The proofs submitted in the matter at hand are persuasive and compelling. No religious question is involved since the application is not in conflict with the tenets, practices, or customs of the Presbyterian Church. The burying ground is no longer used and has not been used since the turn of the century. It is in a dilapidated and run-down condition to a point where it cannot be restored. *147 No one visits the cemetery anymore or indicates any interest in it. No one contributes anything to its upkeep. To attempt to maintain the property with any semblance of respectability would constitute a drain on the income of the church.
The property itself, and it is about three acres in size, is located in the heart of the downtown section of Newark and within a stone's throw of the intersection of Broad and Market Streets. The property has a tremendous economic potential and could return the church substantial income thereby increasing its ability to pursue increased religious and eleemosynary activities. Further than that, the proper development of this land could act as a stimulus and benefit to the entire neighborhood. For example, it has been suggested that an automobile parking area could be located on this site. In this day and age when large business sections of our municipalities are suffering because of the lack of adequate parking facilities, the benefits of using this location for automobile parking can well be appreciated.
When this suit was commenced, notice by publication was given to all interested persons. In addition, the Attorney General of this State was joined to represent the public interest and a guardian ad litem was appointed for all unknown persons whose rights would be affected by the suit. At the hearing, one person, who believed she had a remote ancestor buried in the cemetery, did appear to object to the plan submitted by plaintiff. Her feeling was that the graves of the dead should remain undisturbed.
Respect for the dead does not require that land once used as a burial ground shall forever be hallowed and set aside as a final resting place. If that were so the dead would in time crowd the living off the face of the earth.
The proposal submitted by plaintiff is sensible, has due regard for the memory of the persons buried in the cemetery, and also recognizes the practicalities of the situation. No good reason appears why plaintiff should be required to continue the existence and maintenance of this cemetery. On the contrary, it is quite clear that the trust, subject to *148 which plaintiff owns this property, has been substantially fulfilled and these lands should now be freed of any dedication for burial purposes. Judgment will be entered approving the plan submitted and plaintiff will be authorized to carry it out accordingly to its terms.
Because of the condition of almost all of the grave stones, monuments and markers, and the impossibility as a practical matter, of moving or relocating them over the common grave, plaintiff will not be required to reset them in the reserved area. They may be disposed of as provided in the plan. In lieu thereof, a single monument, the design of which has been submitted to the court, is to be erected over the common grave.
The judgment will also provide that, subject to the plaintiff's complying with the provisions of the plan submitted, all of the cemetery property less the reserved area will be freed of any dedication for burial purposes and plaintiff may use or dispose of the same as it sees fit.