CALVIN L. SJUTS, INDIVIDUALLY AND AS TRUSTEE OF THE CALVIN L. SJUTS TRUST, AND BARBARA F. SJUTS, INDIVIDUALLY AND AS TRUSTEE OF THE BARBARA F. SJUTS TRUST, APPELLANTS, V. GRANVILLE CEMETERY ASSOCIATION ET AL., APPELLEES.

719 N.W.2d 236

Filed July 28, 2006.   No. S-05-124.

James G. Egley, of Moyer, Moyer, Egley, Fullner & Montag, for appellants.

Brian F. Beckner for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
Appellants, Calvin L. Sjuts, individually and as the trustee of the Calvin L. Sjuts Trust, and Barbara F. Sjuts, individually and as the trustee of the Barbara F. Sjuts Trust, brought this quiet title action in the district court for Platte County against appellees,

Granville Cemetery Association and all persons having or claiming some right, title, or interest in the property involved in the action (collectively Granville), seeking a prescriptive easement to operate a center-pivot irrigation system over a portion of a 123-year-old cemetery owned by Granville in Platte County, Nebraska. The cemetery property contains at least 17 graves, all of which are marked by stone monuments. Appellants and Granville filed cross-motions for summary judgment. Following an evidentiary hearing, the district court determined that pursuant to the state statutes governing cemetery associations, Granville held certain quasi-public authority with respect to the cemetery property and that as such, the cemetery property possessed a public nature that protected it from appellants' claim of a prescriptive easement. The district court sustained Granville's motion for summary judgment, overruled appellants' motion for summary judgment, and dismissed appellants' quiet title action. Appellants filed an appeal. We affirm.

## STATEMENT OF FACTS

There is essentially no dispute with regard to the material facts. In accordance with the state statutes then in effect, Granville was incorporated as a cemetery association on February 15, 1881. The current version of those laws is now codified at Neb. Rev. Stat. §§ 12-501 to 12-529 (Reissue 1997 & Cum. Supp. 2004). A board of trustees was selected, and the incorporation document was filed with the Platte County clerk on May 5, 1881. In March 1883, Granville acquired 1 acre of property located in Platte County. The deed conveying the property to Granville was recorded. Granville used the property as a cemetery. Seventeen stone grave markers presently mark burial sites within the cemetery property. The most recent stone marker is dated August 16, 1896. There is evidence in the record that as many as 20 other graves may exist in the cemetery, given the existence of various unmarked depressions in the ground. At least one Civil War veteran, F. (Francis) H. Baker, who served from January 11, 1864, to June 24, 1865, is buried in the cemetery.

There is no evidence that Granville was ever dissolved or that the cemetery property was legally abandoned. At some point in time, however, Granville's board of trustees became inactive, and

Granville's board was not reactivated until February 11, 2004. The record reflects that Granville is presently operated on a nonprofit basis.

In 1974, appellants took title to 160 acres, or a quarter section, in Platte County, initially individually, and later as trustees for their own individual trusts. The deeds conveying the quarter section to appellants purported to include the acre containing Granville's cemetery property. Appellants admit in their brief, however, that regardless of the language in the deeds, Granville "holds title to one square acre in the [quarter section]." Brief for appellants at 4. Appellants paid property taxes upon the entire quarter section until 2001, at which time, the cemetery property was taken off the tax rolls.

In 1976, appellants installed and began to operate a center-pivot irrigation system on the quarter section, and they have continued to operate the irrigation system annually, on a seasonal basis, since it was installed. When in operation, the irrigation system crosses a portion of the cemetery property. The two wheels that carry the last tower of the pivot system travel in a regular path across portions of the cemetery property, and the record shows that these wheels have left well-worn tracks as a result of crossing the cemetery grounds. Although appellants assert that the wheels of the pivot system do not cross any graves, they acknowledge that "irrigation pipe and sprinklers pass over the gravesites." Brief for appellants at 5.

On November 13, 2003, appellants filed their quiet title complaint, seeking a prescriptive easement across the cemetery property to operate their center-pivot irrigation system. Granville filed an answer, which in summary denied that appellants were entitled to the easement. Following discovery, the parties filed cross-motions for summary judgment. The cross-motions for summary judgment came on for an evidentiary hearing on August 13, 2004. Numerous witnesses testified by deposition and affidavit, including Mary Schott, a descendent of several persons buried in the cemetery.

On December 30, 2004, the district court filed its memorandum order, sustaining Granville's motion for summary judgment, overruling appellants' motion for summary judgment, and dismissing appellants' complaint. In its order, the district court

noted that it had reviewed the statutes governing cemetery associations. The court determined that under those statutes, cemetery associations possessed several characteristics with regard to cemetery property ownership that were similar to characteristics possessed by public entities. Those characteristics included the cemetery association's authority to condemn property, restrictions on the alienation of cemetery property, and the tax-exempt status of cemetery property. The district court noted that pursuant to Neb. Rev. Stat. § 39-1404 (Reissue 2004), adverse possession actions, such as an action for a prescriptive easement, cannot be maintained against governmental properties. Given the public nature of certain characteristics possessed by cemetery associations with regard to cemetery property, the district court reasoned that property owned by cemetery associations was in the nature of public property and, thus, was not subject to prescription. As a result, the court concluded that appellants were not entitled to a prescriptive easement against Granville's cemetery property to operate their irrigation system. Appellants filed their appeal.

## ASSIGNMENT OF ERROR

On appeal, appellants assign three errors that can be restated as one. Appellants claim, restated, that the district court erred in sustaining Granville's motion for summary judgment, denying appellants' motion for summary judgment, and dismissing appellants' quiet title complaint.

## STANDARDS OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Cole v. Isherwood*, 271 Neb. 684, 716 N.W.2d 36 (2006). The interpretation of a statute presents a question of law. See *State ex rel. Musil v. Woodman*, 271 Neb. 692, 716 N.W.2d 32 (2006). When an appeal calls for statutory interpretation, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415 (2006).

## ANALYSIS

The issue presented in this case is whether appellants can obtain a prescriptive easement for the purpose of operating irrigation equipment over property that is held by a cemetery association and that has been and continues to be used for human burial purposes. Critical to our analysis in this case is the fact that this cemetery has not lost its character as a burial place throughout its existence.

On appeal, appellants challenge the district court's decision granting Granville's motion for summary judgment, denying appellants' motion for summary judgment, and dismissing appellants' quiet title action seeking the prescriptive easement. As noted above, the district court reasoned, in part, that given the provisions of the statutes governing cemetery associations, cemetery property was of a "public nature" and that thus, the property was afforded protection from a claim of prescriptive rights pursuant to § 39-1404, which provides:

> No privilege, franchise, right, title, right of user, or other interest in or to any street, avenue, road, thoroughfare, alley or public grounds in any county, city, municipality, town, or village of this state, or in the space or region under, through or above such street, avenue, road, thoroughfare, alley, or public grounds, shall ever arise or be created, secured, acquired, extended, enlarged or amplified by user, occupation, acquiescence, implication, or estoppel.

Upon due consideration, we conclude under the facts of this case that given the statutes governing cemetery associations as well as other statutes, and given certain principles regarding property law and the law of cemetery property, the district court did not err. We affirm the district court's decision.

▉ Appellants claim a prescriptive easement over the cemetery association's property. In considering appellants' claim of a prescriptive easement, we refer initially to certain principles of ordinary property law. We have noted that the use and enjoyment that will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession that will give title to real estate. See *Lake Arrowhead, Inc. v. Jolliffe*, 263 Neb. 354, 639 N.W.2d 905 (2002) (citing *Harders v. Odvody*, 261 Neb. 887, 626 N.W.2d 568 (2001)). A

party claiming a prescriptive easement must show that his or her use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. *Id.*; *Simacek v. York County Rural P.P. Dist.*, 220 Neb. 484, 370 N.W.2d 709 (1985). With regard to the element of exclusivity, however, we have recognized that in the area of prescriptive easements, "[t]he term 'exclusive' does not mean that the easement must be used by one person only." *Scoville v. Fisher*, 181 Neb. 496, 503, 149 N.W.2d 339, 344 (1967). Rather, it means that "the use does not depend upon a similar right in others and that it must be exclusive as against the community or public at large." *Id.* We have noted that the law treats a claim of prescriptive right with disfavor and that accordingly, such a claim requires all the elements of such adverse use be clearly, convincingly, and satisfactorily established. *Lake Arrowhead, Inc. v. Jolliffe, supra.* Further, as the instant case demonstrates, the record must show that there is no legal impediment to the claim of a prescriptive right. See, e.g., § 39-1404; *Topping v. Cohn*, 71 Neb. 559, 99 N.W. 372 (1904) (stating that title by adverse possession cannot be acquired against state or general government property).

Cemetery associations are created and governed pursuant to the provisions of chapter 12, article 5, of the Nebraska Revised Statutes, and thus, we review the statutory provisions relevant to the resolution of this case. Section 12-501 provides, inter alia, as follows:

Every cemetery hereafter established, other than those owned, operated and maintained by towns, villages and cities, by churches, and by fraternal and benevolent societies, shall be owned, conducted and managed by cemetery associations organized and incorporated as hereinafter provided. . . . It shall be lawful for any number of persons, not less than five, who are residents of the county in which they desire to form themselves into an association, to form themselves into a cemetery association, and to elect any number of their members, not less than three, to serve as trustees, and one member as clerk, who shall continue in office during the pleasure of the society . . . .

Pursuant to § 12-506, cemetery associations "have the power to purchase or take by gift, devise, or by exercising the power

of eminent domain . . . . The procedure to condemn property shall be exercised in the manner set forth in sections 76-704 to 76-724." With regard to property held by cemetery associations, the cemetery association statutes provide that such property is not subject to taxation and is generally exempt from execution, attachment, or partition. See, § 12-506 (describing cemetery association property as "exempt from taxation, execution, or from any appropriation of public purchasers"); § 12-517 (generally exempting burial lots sold by cemetery association from "taxation, execution, attachment, or any other claim, lien or process whatever"); § 12-520 (providing that "[l]ands appropriated and set apart as burial grounds, either for public or private use, and so recorded in the county clerk's office of the county where such lands are situated, shall not be subject to sale on execution on any judgment to be hereafter recovered, to taxation, nor to compulsory partition").

The cemetery association statutes also restrict a cemetery association's ability to alienate property. If a cemetery association has sold a lot for burial purposes, and the purchase price of a cemetery lot has not been fully paid in 3 years, a cemetery association may "sell the unused portion of [the] lot," but only after giving 60 days' notice of its intention to sell the lot and filing proof of such notice with the register of deeds. See § 12-505.

Further, in the event a cemetery association determines that cemetery association property should cease to be used as a cemetery, due to abandonment or other reasons, the cemetery association must generally comply with the provisions of §§ 12-521 to 12-529, which require, inter alia, that the cemetery association file an action in the district court of the county where the property is located and obtain a court order to discontinue the cemetery association and to sell the unused portions of the cemetery property.

■ These statutes deal specifically with cemetery property owned by cemetery associations, and the fact that it is property that continues to be used as a cemetery over which appellants seek a prescriptive easement to operate an irrigation system is relevant to our analysis. Compare *Cleveland Cemetery Assn v Cuyahoga Co Comrs*, 7 Ohio Law Abs. 589 (Ohio App. 1929) (granting cemetery association's request to enjoin county's

attempt to acquire easement through cemetery property, stating "such proposed easement would in some degree destroy the use of the cemetery association, or at least materially interfere with the use by the association and the lot owners"). It has been widely recognized that "a cemetery, by its inherent nature, is not subject to the laws of ordinary property." See *State ex rel. Stephan v. Lane*, 228 Kan. 379, 386, 614 P.2d 987, 993 (1980). See, also, *Abrams v. Lakewood Park Cemetery*, 355 Mo. 313, 325, 196 S.W.2d 278, 284 (1946) (stating that "[i]ndubitably, the usual and ordinary rules of real property law are modified once land is devoted to cemetery purposes"); *Smallwood v. Midfield Oil Co.*, 89 S.W.2d 1086, 1090 (Tex. Civ. App. 1935) (stating "[i]n reverence of the dead, the law segregates and removes from the realm of commerce property dedicated as a cemetery, and it is no longer a subject-matter of conveyance . . . as other property so as to interfere with the use and possession to which it has been devoted").

 Moreover, the cases have observed that cemetery property in general has a public nature. " '[A] cemetery is as public a place as a courthouse, or a market. It may not be frequented as much, but visits to it are necessary and as certain. . . . We may keep away from the courthouse, and avoid the market, but the place of the dead none may shun.' " *State ex rel. Stephan v. Lane*, 228 Kan. at 386, 614 P.2d at 993 (quoting *Cemetery Association v. Meninger*, 14 Kan. 312 (1875)). See, also, *Trustees of First Presbyterian Church v. Alling*, 54 N.J. Super. 141, 145, 148 A.2d 510, 513 (1959) (stating "[a] burying ground or cemetery is affected with a public interest and is a trust").

In view of the foregoing, we agree with the reasoning of the district court that for purposes of evaluating appellants' action seeking a prescriptive easement, cemetery property is quasi-public in nature and that as a result, appellants are not entitled to a prescriptive easement against Granville's cemetery property to operate an irrigation system. But see *Pokrok Zapadu Publishing Co. v. Zizkovsky*, 42 Neb. 64, 60 N.W. 358 (1894) (stating that in context of libel action, cemetery association was considered private entity).

 Under Nebraska's cemetery association laws, and as recognized by other jurisdictions, it is apparent that there is a

public nature to certain of the statutory authority given cemetery associations with regard to cemetery property. Like a public entity, cemetery associations are authorized to take property by the power of eminent domain. See § 12-506. Compare *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 720, 605 N.W.2d 472, 478 (2000) (stating that actions involving eminent domain have "public nature"). Like public property in Nebraska, the property held by a cemetery association is exempt from taxation and execution. See §§ 12-506 and 12-517. Compare Neb. Rev. Stat. §§ 15-844 (Cum. Supp. 2004) (relating to tax-exempt and execution-exempt status of cities) and 77-202 (Supp. 2005) (relating to tax-exempt status of state).

▮ The authority and exemptions given to cemetery associations with regard to cemetery property are very similar to those given to public entities, and we conclude that with regard to cemetery property owned by a cemetery association, the Legislature intended that such property was quasi-public in nature. See *Edholm v. Missouri P. R. Corporation*, 114 Neb. 845, 847, 211 N.W. 206, 208 (1926) (stating in part that right-of-way seized by railroad under eminent domain power was possessed by railroad for "public use"). We agree with the district court that in the context of appellants' claim of a prescriptive easement against cemetery property owned by Granville that has not been abandoned, the cemetery property is similar in nature to public property. Thus, consistent with § 39-1404, which ordinarily precludes obtaining an interest in "public grounds," as a matter of law, appellants were not entitled to a prescriptive easement to operate an irrigation system across the cemetery property.

For the sake of completeness, we note that we are aware of certain authorities in other jurisdictions suggesting that adverse possession or prescriptive easement claims can be brought against cemetery property. See, e.g., *Bogner v. Villiger*, 343 Ill. App. 3d 264, 796 N.E.2d 679, 277 Ill. Dec. 593 (2003); *Trout v. Summit Lawn Cemetery Assoc.*, 160 Ind. App. 552, 312 N.E.2d 498 (1974); *Phinney v. Gardner*, 121 Me. 44, 115 A. 523 (1921). However, because each of these cases failed due to failure of proof, and none of these cases involved a legal discussion of cemetery association statutes similar to those enacted in Nebraska, we find these cases inapposite.

## CONCLUSION

In summary, we conclude that given the public nature of certain characteristics possessed by cemetery associations with regard to cemetery property, the district court did not err when it determined that the cemetery property owned by Granville that has been in continuous use as a burial ground was in the nature of public property and, thus, was not subject to a prescriptive easement. The court did not err when it sustained Granville's motion for summary judgment, overruled appellants' motion for summary judgment, and dismissed appellants' quiet title complaint seeking a prescriptive easement over Granville's cemetery property to operate an irrigation system. Appellants' assignment of error is without merit. We affirm.

AFFIRMED.